[No. S129522. Aug. 2, 2007.]

In re TOBACCO CASES II.

**COUNSEL**

Blumenthal & Markham, Norman B. Blumenthal, David R. Markham, Kyle R. Nordrehaug; Thorsnes, Bartolotta & McGuire, Vincent J. Bartolotta, Jr., John F. McGuire, Karen Frostrom; Chavez & Gertler, Mark A. Chavez; and Thomas E. Sharkey for Plaintiffs and Appellants.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, William N. Brieger, Acting Chief Assistant Attorney General, Tom Greene, Chief Assistant Attorney General, Dennis Eckhart, Albert Norman Shelden and Herschel T. Elkins, Assistant Attorneys General, Ronald Reiter, Seth E. Mermin and Alan Lieberman, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Munger, Tolles & Olson, Gregory P. Stone, Daniel P. Collins, Steven B. Weisburd, Anne M. Voigts; Seltzer Caplan McMahon Vitek, Gerald L. McMahon and Daniel E. Eaton for Defendant and Respondent Philip Morris USA Inc.

Gray Cary Ware & Freidenrich, DLA Piper Rudnick Gray Cary, DLA Piper US, William S. Boggs, Brian A. Foster, Brian A. Fogarty; Shook Hardy & Bacon, Craig Gustafson and Gregory L. Fowler for Defendant and Respondent Lorillard Tobacco Company.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Dechert, H. Joseph Escher III, Todd E. Thomson; Wright & L'Estrange, Robert C. Wright; Jones,

Day, Reavis & Pogue, Jones Day and William T. Plesec for Defendants and Respondents R. J. Reynolds Tobacco Company.

Sedgwick Detert Moran & Arnold and Steve D. DiSaia for Defendant and Respondent Brown & Williamson Tobacco Corporation.

Susan Liebeler; Daniel J. Popeo and Richard A. Stamp for Washington Legal Foundation as Amicus Curiae on behalf of Defendants and Respondents.

Horvitz & Levy, Lisa Perochet, John A. Taylor, Jr., Jeremy B. Rosen; Cahill Gordon & Reindell, Floyd Abrams and Joel Kurtzberg for Association of National Advertisers, Inc., American Advertising Federation and American Association of Advertising Agencies as Amici Curiae on behalf of Defendants and Respondents.

Hugh F. Young, Jr.; Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Gail E. Lees and William E. Thomson for the Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

---

**OPINION**

**KENNARD, J.**—In *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057 [31 Cal.Rptr.2d 358, 875 P.2d 73] (*Mangini*), this court held that the Federal Cigarette Labeling and Advertising Act (FCLAA) (15 U.S.C. § 1331 et seq.), which regulates tobacco advertising, did not preempt a claim against tobacco companies under the state unfair competition law (Bus. & Prof. Code, § 17200 et seq.) for advertising cigarettes in a manner that encouraged minors to begin smoking. The main issue presented here is whether, as the Court of Appeal concluded, the United States Supreme Court's later decision in *Lorillard Tobacco Co. v. Reilly* (2001) 533 U.S. 525 [150 L.Ed.2d 532, 121 S.Ct. 2404] (*Lorillard*) is inconsistent with, and thus impliedly disapproved, *Mangini*. We agree with the Court of Appeal, and we are bound to accept the high court's decision in *Lorillard* as controlling authority. Accordingly, we will affirm the Court of Appeal's judgment.

**I**

In 1994, four years before this action was filed, the Attorney General of California joined with the attorneys general of the other 49 states in bringing

an action against six tobacco companies, including Phillip Morris Incorporated (Phillip Morris), R.J. Reynolds Tobacco Company (R.J. Reynolds), Lorillard Tobacco Company (Lorillard), and Brown & Williamson Tobacco Corporation (Brown & Williamson). In November 1998, that action was resolved by a master settlement agreement under which the defendants agreed to pay the states a total of $206 billion and consented to an injunction barring them from " '[t]aking any action, directly or indirectly, to target' " minors in their advertising, promotion, or marketing of tobacco products.[1] (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2004) 116 Cal.App.4th 1253, 1258–1259 [11 Cal.Rptr.3d 317].) The settlement agreement also enjoined the defendants from engaging in a number of specific advertising and promotional techniques, such as brand-name sponsorship of events with a significant youth audience. The defendants expressly waived any claims that any provision of the agreement violated state or federal Constitutions. (116 Cal.App.4th at p. 1266, fn. 10.) The agreement provided that it settled claims only by the state attorneys general, so that individual plaintiffs retained the right to sue.

A month before the master settlement agreement was executed, plaintiffs Devin Daniels, Bryce Clements, Daimon Fullerton, Nicole Morrow, and Maren Sandler filed this class action against Phillip Morris, R.J. Reynolds, Lorillard, and Brown & Williamson on behalf of "all persons who as California resident minors (under 18 years of age) smoked one or more cigarettes in California between April 2, 1994, and December 31, 1999." (*Daniels v. Phillip Morris Cos., Inc.* (Super. Ct. San Diego County, 1998, No. 719446).) Plaintiffs' complaint, based in large part on the California Attorney General's complaint in the 1994 action, alleged that defendant tobacco companies' advertising and promotional activities intentionally targeted minors.

Specifically, plaintiffs alleged that defendants R.J. Reynolds and Phillip Morris conducted marketing studies to determine how best to induce teenagers ages 13 to 17 to begin smoking; that all defendants designed advertisements and marketing campaigns to appeal to minors; that these campaigns included placing advertisements near schools, near playgrounds, in video arcades, and in youth-oriented publications; that defendants sponsored sporting events and concerts that appealed to minors; and, finally, that defendants paid to have their products used in films that appealed to youth audiences. Plaintiffs alleged that other tobacco companies that did not target minors lost market shares to defendants.

Plaintiffs alleged that defendants' conduct violated the state unfair competition law, which authorizes civil suits for "any unlawful, unfair or fraudulent

---

[1] Forty-six states, including California, signed the master settlement agreement, while the other four states settled independently.

business act or practice and unfair, deceptive, untrue or misleading advertising" (Bus. & Prof. Code, § 17200), because the conduct encouraged or induced violation of Penal Code section 308, which prohibits the sale of tobacco to minors and the purchase and possession of tobacco by minors. Defendants' advertising campaigns, plaintiffs alleged, succeeded in inducing plaintiffs and all other members of the class to begin using defendants' cigarettes when plaintiffs were still minors; plaintiffs and the other class members became addicted to nicotine and are unable to stop smoking, spending substantial sums annually to buy cigarettes. In their second amended complaint, at issue here, plaintiffs seek restitution of defendants' profits from the sale of cigarettes to minors since April 2, 1994.

Other plaintiffs filed actions similar to the suit filed by plaintiffs here. The trial court ordered the case added to Judicial Council Coordination Proceeding No. 4042, entitled *In re Tobacco Cases II*, and it certified the class. In March 2002, defendants jointly moved for summary judgment on the ground that the FCLAA preempted the state law on which plaintiffs' complaint was based. Four days later, defendants jointly filed a second motion for summary judgment on the ground that defendants' advertising and marketing practices were protected speech under the First Amendment to the federal Constitution.

In support of their summary judgment motions, defendants filed declarations stating that their advertising appeals to adults as well as to minors, that defendants themselves do not sell cigarettes to consumers, and that defendants have fully complied with federal labeling requirements. In opposition, plaintiffs submitted declarations asserting that defendants' advertising and promotions deliberately targeted minors, and they attached copies of defendants' advertisements.

The trial court granted both of defendants' summary judgment motions and entered judgment for defendants. Plaintiffs appealed.

On the preemption issue, the Court of Appeal recognized that our decision in *Mangini, supra,* 7 Cal.4th 1057, was directly on point. The Court of Appeal concluded, however, that *Mangini* had been superseded by the United States Supreme Court's decision in *Lorillard, supra,* 533 U.S. 525. Relying on *Lorillard,* the Court of Appeal affirmed the summary judgment for defendants on the preemption issue, without deciding whether the federal Constitution's First Amendment established an independent ground for sustaining the summary judgment. We granted plaintiffs' petition for review.

## II

### A. *Introduction*

■ As we explained in *Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910 [12 Cal.Rptr.3d 262, 88 P.3d 1], the supremacy clause of article VI of the United States Constitution grants Congress the power to preempt state law. "[S]tate law that conflicts with federal law is 'without effect.' " (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608] (*Cipollone*), quoting *Maryland v. Louisiana* (1981) 451 U.S. 725, 746 [68 L.Ed.2d 576, 101 S.Ct. 2114].) It is well established that "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress,' " and also that " ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis." (*Cipollone, supra*, at p. 516; accord, *Lorillard, supra*, 533 U.S. at pp. 541–542.)

■ The United States Supreme Court has explained that federal preemption arises in three circumstances: "First, Congress can define explicitly the extent to which its enactments pre-empt state law. [Citation.] Pre-emption fundamentally is a question of congressional intent, [citation], and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one. [¶] Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. . . . [¶] Finally, state law is pre-empted to the extent that it actually conflicts with federal law." (*English v. General Electric Co.* (1990) 496 U.S. 72, 78–79 [110 L.Ed.2d 65, 110 S.Ct. 2270]; see *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372–373 [147 L.Ed.2d 352, 120 S.Ct. 2288]; *Dowhal v. SmithKline Beecham Consumer Healthcare, supra*, 32 Cal.4th at pp. 923–924.)

Here, we need not consider the second and third forms of preemption because the preemptive scope of the FCLAA "is governed entirely by the express language" of the act. (*Cipollone, supra*, 505 U.S. at p. 517; see also *Lorillard, supra*, 533 U.S. at p. 541 ["our task is to identify the domain expressly pre-empted"].)

Defendants here contend that, notwithstanding our decision to the contrary in *Mangini, supra*, 7 Cal.4th 1057, the FCLAA preempts a claim asserted under the state unfair competition law that seeks to impose liability on tobacco companies for advertising and promotional practices that target

minors for the purpose of inducing them to purchase and smoke cigarettes. To evaluate that contention, we first examine specific provisions of federal and state statutes concerning cigarette advertising and minors, then turn to *Mangini* and to the United States Supreme Court's decisions in *Cipollone, supra*, 505 U.S. 504, and *Lorillard, supra*, 533 U.S. 525.

### B. *The Federal Cigarette Labeling and Advertising Act*

■ We summarized the pertinent federal legislation in *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707 [36 Cal.Rptr.3d 814, 124 P.3d 408] *(Reynolds)*. The FCLAA, which Congress enacted in 1965, prohibits manufacturing, packaging, or importing for sale or distribution any cigarettes whose package fails to bear specified warnings by the Surgeon General. (15 U.S.C. § 1333.) The preemption provision of the 1965 federal act prohibited states from requiring tobacco companies to add to cigarette labels or advertising any statements relating to smoking and health that were not required by federal law. (See Federal Cigarette Labeling and Advertising Act, Pub.L. No. 89-92, § 5 (July 27, 1965) 79 Stat. 283.) In 1969, however, Congress amended the FCLAA to require stronger warnings of the dangers of smoking, to allow the Federal Trade Commission to require warnings in cigarette advertising, and to prohibit cigarette advertising in "any medium of electronic communication subject to the jurisdiction of the Federal Communications Commission." (15 U.S.C. § 1335; see *Lorillard, supra*, 533 U.S. at p. 544.) At the same time, Congress expanded the scope of federal preemption by amending the federal act to provide: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." (15 U.S.C. § 1334(b).)

### C. *The California Statutes*

■ The state unfair competition law (Bus. & Prof. Code, § 17200 et seq.) authorizes civil suits for "unfair competition" *(id.*, § 17204), which it defines to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *(id.*, § 17200). "It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' " *(Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) "By defining unfair competition to include any *'unlawful* . . . business act or practice' [citation], the [unfair competition law] permits violations of other laws to be treated as unfair competition that is independently actionable." *(Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal.Rptr.2d 296, 45 P.3d 243].)

■ Penal Code section 308 prohibits both the sale of tobacco products to any person under the age of 18 and the purchase and possession of tobacco products by any such minor. Violation is a misdemeanor. When first enacted in 1891, Penal Code section 308 prohibited only selling or furnishing tobacco to minors. (Stats. 1891, ch. 70, § 1, p. 64.) Subdivision (b), which prohibits the purchase of tobacco by minors, was added in 1988. (Stats. 1988, ch. 1045, § 1, pp. 3393–3394.) Penal Code section 308 provides criminal punishment for violators, but it does not expressly authorize civil liability, nor does it expressly refer to advertising of tobacco products.

### D. *Cipollone*

The United States Supreme Court's 1992 decision in *Cipollone, supra,* 505 U.S. 504, was its first decision construing the FCLAA. "The issue there was whether the [FCLAA's] ban on state regulation of *advertising* in [15 United States Code] section 1334 preempted state common law actions accusing tobacco companies of failing to warn of the dangers of smoking, of fraudulent advertising, of breaching warranties that asserted that the use of cigarettes had no significant health consequences, and of conspiring to deprive the public of scientific and medical data showing the dangers of tobacco use. In a divided opinion, the high court held that the federal act preempted only the causes of action based on failure to warn of the dangers of tobacco use, but permitted the other causes of action." (*Reynolds, supra,* 37 Cal.4th at p. 721.)

Justice Stevens authored the lead opinion in *Cipollone,* concluding that the FCLAA preempted some, but not all, of the plaintiff's causes of action. Chief Justice Rehnquist, Justice White, and Justice O'Connor joined fully in that opinion. Justice Blackmun wrote a concurring and dissenting opinion, in which Justices Kennedy and Souter joined, asserting there was no evidence of an unambiguous congressional intent to preempt any common law cause of action. (*Cipollone, supra,* 505 U.S. at p. 531 (conc. & dis. opn. of Blackmun, J.).) Although he joined in parts I through IV of Justice Stevens's lead opinion, Justice Blackmun dissented from that opinion's parts V and VI, in which Justice Stevens explained why the FCLAA preempted some common law claims but not others. (505 U.S. at p. 531.) In another concurring and dissenting opinion, Justice Scalia, joined by Justice Thomas, took the opposite view, that the FCLAA preempted all of the common law causes of action. (505 U.S. at p. 544 (conc. & dis. opn. of Scalia, J.).) Justice Scalia did not join in any part of Justice Stevens's opinion.[2]

---

[2] Because seven justices joined in parts I through IV of Justice Stevens's opinion, we attribute the analysis and conclusions in those parts to the high court. Because only four justices joined in parts V and VI of Justice Stevens's opinion, we refer to those parts as a plurality opinion or a plurality analysis.

■ In *Cipollone*, the high court noted that in the FCLAA's 1965 preemption provision "Congress spoke precisely and narrowly" (*Cipollone, supra,* 505 U.S. at p. 518), but that "the plain language of the pre-emption provision in the 1969 Act is much broader" (*id.* at p. 520). The *Cipollone* plurality set forth an analysis to be used to determine whether, as amended in 1969, the FCLAA preempts a common law cause of action. "The central inquiry in each case," Justice Stevens wrote, "is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." (*Cipollone, supra,* 505 U.S. at pp. 523–524 (plur. opn. of Stevens, J.).) The plurality then applied that analysis to the common law claims at issue there, which were based on New Jersey law, for failure to warn, breach of express warranty, fraudulent misrepresentation, and conspiracy to misrepresent or conceal material facts.

To support the claim for failure to warn, the plaintiff in *Cipollone* had asserted two related theories: "first, that [the defendant tobacco companies] 'were negligent in the manner [that] they tested, researched, sold, promoted, and advertised' their cigarettes; and second, that [the tobacco companies] failed to provide 'adequate warnings of the health consequences of cigarette smoking.' " (*Cipollone, supra,* 505 U.S. at p. 524 (plur. opn. of Stevens, J.).) The plurality reasoned that because the FCLAA preempts common law claims "to the extent that they rely on a state-law 'requirement or prohibition . . . with respect to . . . advertising or promotion,' " it preempted the plaintiff's failure-to-warn claim, under either theory, insofar as it asserted that the tobacco companies' "post-1969 advertising or promotions should have included additional, or more clearly stated, warnings." (*Cipollone, supra,* at p. 524 (plur. opn. of Stevens, J.).) The FCLAA did not preempt the failure-to-warn claim, however, insofar as that claim relied "solely on [the tobacco companies'] testing or research practices or other actions unrelated to advertising or promotion." (*Cipollone, supra,* at pp. 524–525 (plur. opn. of Stevens, J.).)

The *Cipollone* plurality concluded that the FCLAA did not preempt the claim for breach of express warranty because any requirements enforced through that claim were not imposed under state law but instead had been voluntarily undertaken by the party issuing the warranty. "In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under State law*' within the meaning of § 5(b) [of the FCLAA]." (*Cipollone, supra,* 505 U.S. at p. 526 (plur. opn. of Stevens, J.), fn. omitted.)

The plaintiff in *Cipollone* had alleged two theories of fraudulent misrepresentation. The *Cipollone* plurality concluded that the FCLAA preempted the

claim under the first theory, which was that the defendant tobacco companies, "through their advertising, neutralized the effect of federally mandated warning labels," because that theory was "predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking." (*Cipollone, supra*, 505 U.S. at p. 527 (plur. opn. of Stevens, J.).) But the *Cipollone* plurality concluded that the FCLAA did not preempt the claim under the second theory, which was that the defendant tobacco companies had falsely represented material facts, because that theory was "predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." (*Cipollone, supra*, 505 U.S. at pp. 528–529 (plur. opn. of Stevens, J.).)

For similar reasons, the *Cipollone* plurality concluded that the FCLAA did not preempt the claim for conspiracy to misrepresent or conceal material facts concerning the health hazards of smoking, because "[t]he predicate duty underlying this claim is a duty not to conspire to commit fraud," which was "not a prohibition 'based on smoking and health' as that phrase is properly construed." (*Cipollone, supra*, 505 U.S. at p. 530 (plur. opn. of Stevens, J.).)

### E. *Mangini*

In *Mangini*, which we decided in 1994, the plaintiff sued R.J. Reynolds under the state unfair competition law, claiming that its advertising campaign for Camel cigarettes, featuring a cartoon character called Old Joe Camel, improperly targeted minors. After reviewing the United States Supreme Court decision in *Cipollone, supra*, 505 U.S. 504, decided two years earlier, we concluded that the plaintiff's claims were not preempted. (*Mangini, supra*, 7 Cal.4th at p. 1073.)

The state unfair competition law claim, we reasoned, was analogous to the common law claims for conspiracy and misrepresentation that the high court in *Cipollone, supra*, 505 U.S. 504, had held were not preempted by the FCLAA. (*Mangini, supra*, 7 Cal.4th at pp. 1068–1069.) Under the reasoning of the *Cipollone* plurality, we observed, whether the FCLAA preempts a cause of action depended upon whether "the predicate legal duty" underlying that cause of action was " 'based on smoking and health.' " (*Mangini, supra*, at p. 1068.) Applying that test to the plaintiff's action in *Mangini*, we concluded: "The predicate duty [under the state unfair competition law] is to not engage in unfair competition by advertising illegal conduct or encouraging others to violate the law. In *Cipollone*, the predicate duty—not to deceive—was not 'based on smoking and health'; this one is similarly not." (*Id.* at p. 1069.)

Our decision in *Mangini* also examined Penal Code section 308, which prohibits the sale of tobacco to minors and the purchase of tobacco by

minors. We observed that this statutory prohibition was originally enacted in 1891, long before concerns about the effect of smoking on health arose, and was apparently intended to protect minors from immoral activities. (*Mangini, supra,* 7 Cal.4th at p. 1070.) It is part of a chapter of the Penal Code containing offenses "against good morals," and it is immediately followed by prohibitions against admitting a minor to a house of prostitution (Pen. Code, § 309) or to a prizefight or cockfight (*id.,* § 310). (*Mangini, supra,* at p. 1070.) We concluded: "[T]he state's protective role, and not primarily health concerns, motivated the prohibition against selling cigarettes to minors." (*Ibid.*)

### F. *Lorillard*

Acting under the authority of a state statute banning unfair or deceptive trade practices, and intending to fill gaps in the master settlement agreement that terminated the action brought by the 50 state attorneys general (see *ante,* pp. 1262–1263), the Massachusetts Attorney General in January 1999 issued regulations that, among other things, barred outdoor advertising of cigarettes within 1,000 feet of any school, park, or playground. (*Lorillard, supra,* 533 U.S. at pp. 532–535.) The United States Supreme Court in 2001 held that the FCLAA preempted the Massachusetts regulations. (*Lorillard, supra,* at p. 548.) Justice O'Connor wrote the majority opinion, in which Chief Justice Rehnquist and Justices Scalia, Thomas, and Kennedy joined. Justice Stevens authored a dissenting opinion, in which Justices Souter, Ginsburg, and Breyer joined.

In *Lorillard,* the high court rejected the Massachusetts Attorney General's contention that the state regulations were "not 'based on smoking and health,' because they do not involve health-related content in cigarette advertising but instead target youth exposure to cigarette advertising." (*Lorillard, supra,* 533 U.S. at p. 547.) The court noted that Congress in the FCLAA had "sought to protect the public, including youth, from being inundated with images of cigarette smoking in advertising" and for that reason had "banned electronic media advertising of cigarettes" and had vested the Federal Trade Commission with authority to regulate cigarette advertising. (*Lorillard, supra,* at p. 548.) Observing that the Massachusetts Attorney General's attempt "to address the incidence of underage cigarette smoking by regulating advertising" was similar to the FCLAA's "ban on cigarette advertising in electronic media," the court concluded: "At bottom, the concern about youth exposure to cigarette advertising is intertwined with the concern about cigarette smoking and health. Thus the Attorney General's attempt to distinguish one concern from the other must be rejected." (*Lorillard, supra,* at p. 548.)

██ The high court in *Lorillard* also rejected the argument that federal preemption was limited to cigarette advertising's content, not its location:

"[T]he content/location distinction cannot be squared with the language of the pre-emption provision, which reaches *all* 'requirements' and 'prohibitions' 'imposed under State law.' A distinction between the content of advertising and the location of advertising in the FCLAA also cannot be reconciled with Congress' own location-based restriction, which bans advertising in electronic media, but not elsewhere." (*Lorillard, supra,* 533 U.S. at pp. 548–549.)

The high court summarized its conclusions: "[W]e fail to see how the FCLAA and its pre-emption provision permit a distinction between the specific concern about minors and cigarette advertising and the more general concern about smoking and health in cigarette advertising, especially in light of the fact that Congress crafted a legislative solution for those very concerns. We also conclude that a distinction between state regulation of the location as opposed to the content of cigarette advertising has no foundation in the text of the pre-emption provision. Congress pre-empted state cigarette advertising regulations like the Attorney General's because they would upset federal legislative choices to require specific warnings and to impose the ban on cigarette advertising in electronic media in order to address concerns about smoking and health. Accordingly, we hold that the Attorney General's outdoor and point-of-sale advertising regulations targeting cigarettes are pre-empted by the FCLAA." (*Lorillard, supra,* 533 U.S. at pp. 550–551.)

■ The high court cautioned, however, that the FCLAA did not preempt "generally applicable zoning restrictions" and that "[r]estrictions on the location and size of advertisements that apply to cigarettes on equal terms with other products appear to be outside the ambit of the pre-emption provision." (*Lorillard, supra,* 533 U.S. at pp. 551–552.) Nor does the FCLAA preempt "state laws prohibiting cigarette sales to minors" or state prohibitions on "common inchoate offenses that attach to criminal conduct, such as solicitation, conspiracy, and attempt." (*Lorillard, supra,* at p. 552.)

G. *Analysis*

Plaintiffs argue that their claim is indistinguishable from the fraud claim at issue in *Cipollone, supra,* 505 U.S. 504, which the United States Supreme Court held was not preempted by the FCLAA. They maintain that both the state unfair competition law, on which their claim is based, and the common law prohibition on fraud, on which one of the claims at issue in *Cipollone* was based, are laws of general application not motivated by concerns about smoking and health. But the *Cipollone* plurality did not conclude that, to avoid FCLAA preemption, it was sufficient that a state law claim be based on a law of general application not predicated on concerns about smoking and health. Rather, the plurality there considered each common law theory to determine whether, *as applied in the particular case,* the claim based on that

theory would impose a duty based on concerns about smoking and health. (*Cipollone, supra*, 505 U.S. at pp. 523–530 (plur. opn. of Stevens, J.).) The fraud claim in *Cipollone* sought to regulate cigarette advertising on the basis that it contained false assertions of fact—a content-neutral basis—and the claim sought to impose a duty—the duty not to deceive—that was broader and more general than concerns about smoking and health. (*Id.* at pp. 528–529 (plur. opn. of Stevens, J.).)

The *Cipollone* plurality concluded that the FCLAA did preempt other common law claims insofar as they sought to impose duties on cigarette advertisers based on concerns about smoking and health. (*Cipollone, supra*, 505 U.S. at pp. 523–530 (plur. opn. of Stevens, J.).) Thus, the plurality concluded that the FCLAA preempted the plaintiff's failure-to-warn and fraudulent misrepresentation claims to the extent they sought to impose restrictions, based on concerns about smoking and health, on the content of cigarette advertising. (*Cipollone, supra*, at pp. 524, 527–529 (plur. opn. of Stevens, J.).)

Likewise in *Lorillard, supra*, 533 U.S. 525, the United States Supreme Court stated that the FCLAA did not preempt general zoning regulations that "apply to cigarettes on equal terms with other products" (*Lorillard, supra*, 533 U.S. at p. 552), but also that the FCLAA did preempt the regulations at issue there, which applied only to cigarettes and were based on concerns about youth smoking, because the court concluded that those concerns were indistinguishable from the concern about cigarette smoking and health (*Lorillard, supra*, at p. 548).

Accordingly, it is not sufficient to consider here whether plaintiffs have based their claim on a law of general application that is not motivated by concerns about smoking and health. (See *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 386 [119 L.Ed.2d 157, 112 S.Ct. 2031] ["there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute"].) Rather, we must also determine whether plaintiffs seek, by a particularized application of a general law, to restrict the content or location of cigarette advertising based on concerns about youth smoking, concerns that cannot be distinguished from concerns about smoking and health.

 The state unfair competition law is a law of general application, and it is not based on concerns about smoking and health. Therefore, the FCLAA does not preempt that law *on its face*; nor would the FCLAA preempt a claim under that law that sought to impose only content-neutral restrictions on cigarette advertising—such as a requirement that the advertising not contain false statements of fact—that were unrelated to concerns about smoking and

health. To the extent we so concluded in *Mangini, supra*, 7 Cal.4th 1057, we were correct, and we reaffirm those conclusions.

■ Here, however, as in *Mangini*, plaintiffs' claim is based not only on the state unfair competition law but also on Penal Code section 308, which prohibits sales of tobacco products to minors and possession of tobacco products by minors. The purpose of Penal Code section 308 is to prevent minors from smoking or otherwise using tobacco products. Although we observed in *Mangini* that when enacted in 1891 Penal Code section 308 was not based on health concerns, but rather on concerns about immoral activities (*Mangini, supra*, 7 Cal.4th at p. 1070), the legislative history of recent amendments to that statute shows that it is now unquestionably based in large part, if not entirely, on health concerns. (See, e.g., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1849 (1995–1996 Reg. Sess.) as amended Aug. 26, 1996, pp. 3–4 [detailing major health problems caused by youth smoking as justification for stiffening penalties for minor purchases]; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 757 (2001–2002 Reg. Sess.) as introduced Feb. 23, 2001 [detailing health risks in support of stiffening enforcement of Pen. Code, § 308].) Indeed, the former State Department of Health Services sponsored the 2001 amendment to Penal Code section 308 (Stats. 2001, ch. 376, § 4), and its deputy director wrote, in a letter to the Chair of the Assembly Committee on Governmental Organization urging passage of the amending legislation, that "[p]reventing youth tobacco use is a major public health concern." (Deputy Director Terri Delgadillo, letter to Assemblyman Herb Wesson, June 25, 2001.) And the United States Supreme Court has concluded, in an opinion that is binding on this court, that concerns about youth smoking are inherently intertwined with, and cannot validly be distinguished from, concerns about smoking and health. (*Lorillard, supra*, 533 U.S. at p. 548.)

Plaintiffs' unfair competition claim here seeks to impose on defendant tobacco companies a duty not to advertise in a way that could encourage minors to smoke. That is precisely the duty that the United States Supreme Court in *Lorillard, supra*, 533 U.S. 525, held subject to FCLAA preemption because it is necessarily and inherently based on concerns about smoking and health. Accordingly, plaintiffs' unfair competition claim is preempted, unless it falls within an exception to FCLAA preemption.

Plaintiffs contend that even if the FCLAA otherwise preempts their cause of action, it falls within an exception allowing states to prohibit conduct that constitutes an inchoate crime. In *Lorillard*, after observing that the FCLAA does not preempt state laws prohibiting sales to minors, the high court added: "Having prohibited the sale and distribution of tobacco products to minors,

the State may prohibit inchoate offenses that attach to criminal conduct, such as solicitation, conspiracy, and attempt." (*Lorillard, supra,* 533 U.S. at p. 552.)

In stating in *Lorillard* that the FCLAA does not preempt state prohibitions on cigarette sales to minors or common inchoate offenses that attach to criminal conduct, the United States Supreme Court cannot have meant to include restrictions and regulations on the content and location of cigarette advertising, at least when, as here, there is no allegation that the advertisements directly and expressly incited criminal violations. The purpose underlying FCLAA preemption would be severely undermined if states could invoke the inchoate crime exception on the ground that cigarette advertising, because of its content or location, was intentionally designed to encourage youth smoking.

■■■ In addition, the First Amendment to the United States Constitution limits a state's power to treat speech as criminal. Here, plaintiffs contend that defendant tobacco companies aided and abetted unlawful sales of cigarettes to minors, in violation of Penal Code section 308, because they intentionally used advertising and marketing techniques that target minors, thereby encouraging and facilitating illegal transactions.[3] Defendants contend, however, that when the alleged aiding and abetting consists of speech, the First Amendment to the United States Constitution severely limits accomplice liability.

■■■ Cigarette advertising is commercial speech, and the United States Supreme Court established the principles governing First Amendment protection of commercial speech in *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557 [65 L.Ed.2d 341, 100 S.Ct. 2343] (*Central Hudson*). (See *Lorillard, supra,* 533 U.S. at pp. 561–568.) "For commercial speech to come within [the First Amendment's protection], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." (*Central Hudson, supra,* at p. 566.)

The first three components of the *Central Hudson* test present no controversy here. Defendants' cigarette advertising concerns lawful activity because it is addressed to adults who can legally purchase and use cigarettes, and not exclusively to minors who cannot, and plaintiffs have not alleged that it is

---

[3] Because the California statute prohibiting "solicitation" is limited to certain enumerated felonies (see Pen. Code, § 653f, subd. (a)), and a violation of Penal Code section 308 is a misdemeanor, plaintiffs do not contend that defendants' conduct constituted the inchoate crime of soliciting the sale or use of cigarettes in violation of Penal Code section 308.

misleading. As defendants acknowledge, California has a substantial interest in discouraging the sale of cigarettes to minors and the use of cigarettes by minors. Restricting advertising that has the effect of encouraging minors to smoke would directly advance that interest.

Thus, we arrive at the fourth component of the *Central Hudson* test, whether the state regulation "is not more extensive than is necessary to serve [the state's] interest." (*Central Hudson, supra,* 447 U.S. at p. 566.) As we have explained: "The court has clarified that the last part of the test— determining whether the regulation is not more extensive than 'necessary'— does not require the government to adopt the least restrictive means, but instead requires only a 'reasonable fit' between the government's purpose and the means chosen to achieve it." (*Kasky v. Nike, Inc., supra,* 27 Cal.4th at p. 952, citing *Board of Trustees, State Univ. of N. Y. v. Fox* (1989) 492 U.S. 469, 480 [106 L.Ed.2d 388, 109 S.Ct. 3028].) ·

Here, treating defendants' conduct in advertising their cigarettes as aiding and abetting a violation of Penal Code section 308, and thereby rendering defendants subject to criminal prosecution whenever a minor acquires the cigarettes they marketed, is not a "reasonable fit" with the state's purpose of discouraging smoking by minors. California has, and has employed, many other means of carrying out its policy of discouraging minors from smoking, such as prosecuting retailers who sell cigarettes to minors, taxation to raise the price of cigarettes, advertising and other publicity about the dangers of smoking, and legal actions to restrict the distribution of cigarettes in places where minors are present. (See *Reynolds, supra,* 37 Cal.4th 707.) Through the state Attorney General, California has brought suit under the state unfair competition law to enjoin defendants from targeting minors in their advertising, and it has secured a settlement in which defendants agreed to refrain from such advertising. It has filed actions to enforce that settlement. (See, e.g., *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., supra,* 116 Cal.App.4th 1253.) Such remedies focus properly on smoking by minors as an overall problem, instead of inquiring into which tobacco company may have encouraged a particular minor to smoke a particular brand of cigarette.

We therefore conclude that the free speech guarantee of the federal Constitution's First Amendment does not permit defendants' cigarette advertising to be treated as the aiding and abetting of a criminal offense. Consequently, plaintiffs cannot escape the FCLAA's preemptive force by claiming that defendants' conduct constituted an inchoate criminal offense.

### III

We summarize: Plaintiffs' cause of action against defendant tobacco companies is based on two laws: Penal Code section 308 (which does not

itself regulate advertising but is based on concerns about smoking and health) and the state unfair competition law (which does regulate advertising but is not itself based on concerns about smoking and health). By combining these two laws in a single claim, plaintiffs seek to regulate cigarette advertising on the ground that it targets minors and encourages them to begin smoking. As the United States Supreme Court made clear in *Lorillard, supra,* 533 U.S. 525, the FCLAA preempts any state law or cause of action that seeks to regulate cigarette advertising on that basis. To the extent it concluded otherwise, our opinion in *Mangini, supra,* 7 Cal.4th 1057, has been superseded by the high court's later decision in *Lorillard,* and *Mangini* is therefore overruled.

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.