Filed 5/6/25  Hamidi v. Manheim Investments CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| KHALIL RAHMAN HAMIDI,<br><br>  Plaintiff and Appellant,<br><br>    v.<br><br>MANHEIM INVESTMENTS, INC.,<br><br>  Defendant and Respondent. | G063853<br><br>(Super. Ct. No. 30-2020-01145159)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre De La Cruz, Judge. Affirmed. Request for judicial notice denied.

John C. Hatch for Plaintiff and Appellant.

Klinedinst, Frederick M. Heiser, Robert M. Shaughnessy and Benjamin C. Wohlfeil for Defendant and Respondent.

\*          \*          \*

Plaintiff Khalil Rahman Hamidi appeals following a judgment in favor of defendant Manheim Investments, Inc. (Manheim). Hamidi sued Manheim for, among other things, negligence following a car accident, which took place during an auto auction at Manheim's facility. Hamidi had signed a liability waiver prior to the accident. The trial court granted Manheim's motion for summary judgment, finding that Manheim had failed to allege facts sufficient to overcome the waiver. We conclude that Hamidi has failed to produce evidence to demonstrate the existence of a triable issue of fact as to gross negligence, and therefore we affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

Manheim owns and operates automobile auctions at which wholesale dealers purchase new and used automobiles. Hamidi is an automobile dealer. Dealers are prohibited from entering Manheim's premises to attend an automobile auction without first electronically signing Manheim's Terms and Conditions that are in effect at the time. On June 15, 2018, Hamidi electronically signed Manheim's June 1, 2018 Terms and

---

[1] The appellant's appendix Hamidi filed in this case is disorganized. The documents are included in an order that follows no discernible rhyme or reason, which makes relevant documents more difficult to locate. The documents, referred to as "exhibits," jump from the complaint to the motion for summary judgment to various documents that might have been attached to a motion. We are not sure. The judgment is in the middle of the appendix. Various declarations are scattered throughout. Overall, this lack of organization has made it more difficult for the court to review and use the record. A straight chronological order would have avoided these issues.

Further, Hamidi often uses copies of documents that do not include the court's filing stamp, making it more difficult to determine filing dates. He also failed to include the register of actions, which would have provided those dates. Litigants are reminded that the record is meant to assist the court, and the failure to provide an adequate record may result in the waiver of arguments on appeal.

Conditions (2018 Terms), which were in effect from June 1, 2018 until October 31, 2019.

The 2018 Terms included two provisions that are of particular import here. Paragraph 14 stated: "Safety and Assumption of Risk: Like all auto auctions, our various facilities are busy places with many vehicles, customers, and personnel moving around the premises at all times, particularly during sales events. You understand and acknowledge that the movement of vehicles, equipment, and individuals at our facilities constitutes an open and obvious condition and that Manheim is not obligated to warn you of such conditions. You agree to obey posted signs and follow any warnings you receive from our personnel, particularly as they relate to safety and security issues. You also agree to use extreme care while on our premises to avoid injury to yourself and others, both in moving vehicles on and off the premises and in traversing any sale lanes, parking lots, and offices on foot and otherwise. By entering our private premises, you assume the risk of injury."

Paragraph 23(e) stated: "Waiver and Release of Liability: You hereby waive any claim or cause of action that you may have, either now or in the future, against any Manheim Party, and hereby release the Manheim Parties from any and all liability under such claim or cause of action, in each case to the extent such claim or cause of action arises from or relates to: [¶] . . . [¶] (e) Any personal injury or other property damage suffered while on or around any premises owned or operated by Manheim . . . ." (Capitalization omitted.)

According to the declaration of Greg Parker, Manheim's security manager, auctions at Manheim's premises are in a facility called the barn, which has 13 lanes marked with lines in yellow paint. During auctions,

vehicles drive through the barn inside the lanes. The vehicles move slowly, as "dealers move through, in, and around the lanes inspecting the vehicles. Dealers get very close up to the vehicles. Dealers physically touch the vehicles, open the doors to look inside the vehicles, and listen to and smell the engines of the vehicles for sounds and smells of mechanical problems. The auction floor during a live auction is chaotic. The 13 lanes run simultaneously with approximately 2,000 vehicles running through each auction sale day. Multiple auctioneers are simultaneously announcing over extremely loud sound systems. There are hundreds of dealers, sales representatives, and employees all walking around and through the auction floor during the auction sale day."

On October 3, 2018, Hamidi was at Manheim's premises. John Jeffers was driving a white Dodge Charger down one of the auction lanes. Hamidi, according to his own declaration, was talking with other dealers on the edge of and inside the lane. He stepped forward and then backward, "occupying the same general area as the Charger" as it "slowly" approached him. As he was standing inside the auction lane with his back to the Charger and approximately one to two feet away from it, an unidentified man approached him. His declaration stated he did not know the vehicle was moving towards him and the driver did not honk or shout at him as the driver moved forward. "Due to the unidentified man's presence coming into my personal space, I took a half step back with my right foot and had my right he[e]l/foot run over by the Charger." Hamidi stated he suffered significant injury to his right knee.

Hamidi filed his original complaint in May 2020. Hamidi's first amended complaint (the complaint) was filed in October 2020, with Manheim as the only named defendant. The form complaint alleged causes of action for

4

negligence, premises liability (negligence), and negligent hiring, retention, training, and supervision. On October 19, 2022, Hamidi filed Doe amendments naming On Demand Staffing, Inc. (On Demand) and John Jeffers as defendants. On Demand was apparently the entity that employed Jeffers.

During discovery, Hamidi deposed Ann Cantu, Manheim's operations supervisor, regarding training of the auction vehicle drivers and the safety policy and procedures in place. She testified about various safety procedures, including checklists, that were used during auction days. She also testified regarding safety videos on relevant safety topics.

Cantu also testified about the relationship between Manheim and On Demand. The contract between them required On Demand to supply drivers who had received certificates of completion for one of the safety videos, called "'The 5 Keys to Auto Auction Driving Safety.'"

On April 10, 2023—almost three years after the initial complaint was filed—Manheim moved for summary judgment. In essence, Manheim argued that all of the claims alleged ordinary negligence, and those claims were defeated by the 2018 Terms Hamidi had agreed to.

On or around June 9, 2023, Hamidi filed a motion to file a second amended complaint. The proposed second amended complaint added claims for gross negligence and "intentional tort." At the same time, he filed a motion to compel certain discovery responses against On Demand. But Hamidi's opposition to Manheim's motion for summary judgment was due and filed promptly thereafter.

Hamidi did *not* ask for the motion for summary judgment to be continued, instead, he stated that the motion "to add gross negligence and intentional tort should be granted and the case should continue to be decided

5

by the trier-of-fact." He also stated that On Demand's discovery responses were "critical" to defending against the motion for summary judgment, but again, he did not request a continuance. Instead, he claimed that the motion should be denied "as additional discovery needs to be conducted into On Demand and Manheim's relationship with Defendant John Jeffers." There is no indication in the record that Hamidi attempted to shorten time on either of these motions, which were scheduled to be heard after the motion for summary judgment.

In terms of legal arguments, Hamidi contended that "gross negligence and intentional tort cannot be waived by a release." (Capitalization & boldface omitted.) He argued that "Jeffers moved the vehicle forward while Mr. Hamidi stood mere inches away with his back turned, creeping the Charger behind him without a honk, a shout, or any warning." He further contended this was counter to Jeffers's training and "amount[ed] to wanton or reckless misconduct that John Jeffers knew or should have known his actions and inactions were highly probable that harm to Mr. Hamidi would result." Hamidi also argued that "violat[ing] internal safety policies and industry standards is sufficient to infer gross negligence." (Capitalization, boldface & underline omitted.)

Manheim's reply brief is not included in the record on appeal, although apparently they filed one, as it was mentioned during the hearing on the motion. The court heard argument during the hearing, and at its conclusion, granted Manheim's motion for summary judgment. Judgment was subsequently entered. Hamidi now appeals.

6

# DISCUSSION

## I.

## REQUEST FOR JUDICIAL NOTICE

Citing Evidence Code sections 451, subdivision (d), and 452, subdivision (h), Hamidi requests we take judicial notice of two documents: 1) OnDemand's responses to a request for a production of documents, and 2) the deposition transcript of John Jeffers. Hamidi admits that "[t]he above documents . . . were not presented to the Trial Court until after the judgment in favor of Manheim." The documents were filed with the trial court later, as the case proceeded against other defendants.

"A court may judicially notice the '[r]ecords of . . . any court of this state.'" (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382.) The subject documents did become a part of the court's records after summary judgment had already been granted in Manheim's favor. But only relevant evidence is subject to judicial notice. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled by *In re Tobacco II* (2007) 41 Cal.4th 1257, 1276.) This evidence is not relevant, because when reviewing the correctness of a trial court's judgment, we only consider matters that were part of the record at the time the court entered the judgment. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) "'This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation.'" (*Ibid.*)

Moreover, an appellate court does not take judicial notice of matters that were not before the trial court absent exceptional circumstances. (*Haworth v. Superior Court*, *supra*, 50 Cal.4th at p. 379, fn. 2.) No such circumstances are present here. This is merely a backdoor attempt to

augment the record with documents explicitly excluded from augmentation by the rules of court. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

Hamidi's second rationale for seeking judicial notice is meritless on its face. The documents at issue here do not contain "facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably and indisputable accuracy." (Evid. Code, § 452, subd. (h).) The types of facts subject to judicial notice under that section include matters such as the location of cities and area codes (*People v. Posey* (2004) 32 Cal.4th 193, 215, fn. 9), and dictionary definitions (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 171). Hamidi offers no authority for the proposition that discovery responses are subject to judicial notice under Evidence Code 452, subdivision (h), and even if they were, they would still fail the relevance test.

On page 11 of his request for judicial notice, Hamidi cites, for the first time, Code of Civil Procedure section 909,[2] a separate procedure for taking additional evidence on appeal. As far as his request for judicial notice goes, this citation is unhelpful. If it is intended as a request for taking evidence under that section, it is procedurally improper. It is inadequately noticed, for one thing, and for another, it lacks merit. We exercise our authority under section 909 sparingly, only in exceptional circumstances and only to affirm. (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213; *City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1438, fn. 7.)

The request for judicial notice is denied.

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II.

### SUMMARY JUDGMENT

*A.  Legal Principles*

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. [Citation.] A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. [Citation.] A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636–637.)

*B.  Standard of Review*

We review the trial court's decision de novo, considering all evidence the parties offered in connection with the motion, except that which the court properly excluded, and the uncontradicted inferences the evidence reasonably supports. (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

"'As a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court.'" (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) In other words, we review the trial court's ruling, not its reasoning. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

*C. Continuance*

Hamidi's opening brief asserts, apparently for the first time, that "the trial court should have continued the hearing." In his reply brief, he asserts "[t]he trial court refused to grant a continuance . . . ." Neither of these assertions include record citations. Nor does Hamidi cite to any part of the record demonstrating that he ever filed a motion requesting a continuance.

At the hearing on the motion for summary judgment, the court raised this issue, questioning whether there had been "an adequate showing . . . to delay today's hearing." Hamidi's counsel responded: "And I'm all for, we can, you know, move this hearing to a future date so we can allow the court time to address the motions on calendar." Being "all for" something is not the same as a motion, even an oral motion. We find that no request for a continuance was made.

Even if we were to frame what occurred as the court's consideration of a motion to continue, we review such a request for abuse of discretion. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152.) Section 437c, subdivision (h) states: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. . . ."

Hamidi's counsel's declaration in opposition to the motion for summary judgment stated: "Defendant On Demand Staffing, Inc. was served with Plaintiff's request for production, special interrogatories, and form interrogatories on March 2, 2023. No responses have been provided to date by Defendant On Demand Staffing, Inc. These responses are critical to

10

Plaintiff's overall case and defense of this summary judgment motion as Defendant Manheim alleges that Defendant driver, John Jeffers, was hired by On Demand Staffing, Inc. Also, per the Staffing Agreement between Manheim and On Demand, On Demand was responsible for John Jeffers watching the Safe T. Sam driver training videos. [Citation.] Additional information into these areas and other information regarding the Defendants' relationship is vital to Plaintiffs case in chief and defense of this motion."

The declaration further stated: "Additionally, Plaintiff has a motion to compel discovery responses from newly added Defendant, On Demand, as On Demand has not responded to Plaintiff's request for production, special interrogatories and form interrogatories. [¶] Due to the discovered facts and Manheim's motion, Plaintiff has now filed a motion for leave to amend his first amended complaint to include gross negligence and intentional tort as the newly learned details of the training materials clearly shows a 'lack of any care or an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to oneself or to others' in the way they acted or failed to act."

We note, first, that a request for continuance was not present. These statements were relevant to an argument in Hamidi's opposition, which contended the lack of these discovery responses was a reason to deny the motion outright.

Second, the declaration did not meet the statutory requirements. It requires "reasons stated" why the facts essential to justify opposition *cannot* currently be presented. (§ 437c, subd. (h).) The conclusory assertion that the discovery responses from a separate defendant are "critical to . . . defense of this summary judgment motion" is insufficient. Nothing in

11

counsel's declaration demonstrates the discovery from OnDemand would demonstrate gross negligence.

Nor did the declaration demonstrate diligence. "When lack of diligence results in a party's having insufficient information to know if facts essential to justify opposition may exist, and the party is therefore unable to provide the requisite affidavit under . . . section 437c, subdivision (h), the trial judge may deny the request for continuance of the motion." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398.)

While Hamidi sets forth a lengthy explanation of the discovery timeline in his reply brief on appeal, this is insufficient. To find an abuse of discretion, we can only consider what information Hamidi had placed before the trial court at the time, which, as far as we can tell, included only the three paragraphs of counsel's declaration quoted above. This was insufficient to justify a continuance.

In sum, we find that Hamidi never brought a motion to continue. The court's sua sponte decision that a continuance would not be proper was not an abuse of discretion.

*D. Manheim's Burden*

As noted above, Manheim must demonstrate that one or more elements of Hamidi's causes of action cannot be established as a matter of law as to each cause of action, or that a complete defense exists. (*Grebing v. 24 Hour Fitness USA, Inc., supra,* 234 Cal.App.4th at pp. 636–637.)

Manheim correctly argues that the pleadings determine the issues a defendant must address to obtain summary judgment. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242,1253.) Accordingly, Manheim was not required to address Hamidi's proposed amendment to the complaint, which also would have included "intentional tort" as a cause of action.

12

Manheim was only required to address ordinary negligence, which was the basis for all of Hamidi's claims in the operative complaint. Because Hamidi had not yet raised gross negligence, Manheim was not required to produce evidence to refute that theory. (*Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 33.)

Manheim relied on the release Hamidi signed as a complete defense. While California follows the general rule that a party is responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property." (Civ. Code, § 1714, subd. (a)), "parties may contract for the release of liability for future ordinary negligence so long as such contracts do not violate public policy." (*Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 877 (*Anderson*).)

The relevant portions of the 2018 Terms included a release of liability, which we quoted above. Hamidi admitted the existence of, his agreement to, and the language of the 2018 Terms. He also did not contest the validity of the electronic signatures.

Accordingly, based on the plain language of the release, we find Hamidi released his right to sue Manheim for ordinary negligence, which also includes his claims for negligent hiring and premises liability based on negligence. (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1081.) The release meets the requirement on summary judgment that the moving party demonstrate a complete defense exists. (*Grebing v. 24 Hour Fitness USA, Inc., supra,* 234 Cal.App.4th at pp. 636–637.) Manheim met its burden.

*E. Hamidi's Burden*

Because Manheim met its burden to establish that it is entitled to summary judgment, the burden shifted to Hamidi to present evidence creating a triable issue of material fact. Because gross negligence is simply a type of negligence, rather than a cause of action, Hamidi was entitled to raise it in opposition to the motion for summary judgment. (*Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 825 ["Gross negligence is a subspecies of negligence; it is not a separate tort"].) Unlike ordinary negligence, gross negligence is not subject to a release. (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 758, 777.)

"[T]o set forth a claim for 'gross negligence' the plaintiff must allege extreme conduct on the part of the defendant." (*Rosencrans v. Dover Images, Ltd., supra,* 192 Cal.App.4th at p. 1082.) "Gross negligence" long has been defined in California and other jurisdictions as either a ""'want of even scant care'" or ""'an extreme departure from the ordinary standard of conduct.'""" (*City of Santa Barbara v. Superior Court, supra,* 41 Cal.4th at p. 754.)

Hamidi claims "that facts were pled in the operative complaint that also supported gross negligence." At the summary judgment stage, however, it is irrelevant what facts were pleaded. What matters is the evidence. Hamidi had the burden, using admissible evidence, to demonstrate a triable issue of fact regarding gross negligence. His argument on appeal is that based upon "the facts presented above"—apparently referring to the entirety of his 10-page statement of facts—"there is, and therefore it is a question of fact for the jury to determine whether the release in this case was unenforceable for that reason." This does not constitute a persuasive marshalling of the facts that support his theory.

14

Looking at the evidence, and only the evidence, submitted in opposition to the motion for summary judgment, we have the following. Hamidi was an experienced auto-auction attendee, who had been going to Manheim auctions since 2002. Just before the accident, he stated he was talking with other dealers on the edge of and inside the lane. He stepped forward and then backward, "occupying the same general area as the Charger" as it "slowly approached" him. The video shows that Hamidi's back is to the lane. Hamidi admitted that he "took a half step back with my right foot"—with his back to the vehicle—when the vehicle ran over his foot.

Hamidi complains that the driver did not "honk or shout" at him, but he identifies no requirement to honk or shout continuously, when nothing is blocking the vehicle's movement. There was no impediment to the car moving forward until Hamidi stepped backward into the lane. None of this evidence creates a triable issue of fact as to gross negligence.

Further, nothing in the training materials Hamidi relies upon demonstrates gross negligence in training, supervision, or retention. Some of this "evidence" consists of unproved conclusions, such as Hamidi's assertion, without citation to the record, that "The 5 Keys to Auto Auction Driving Safety" video is the "industry standard." But even taken at face value, none of the documents Hamidi relies on demonstrate gross negligence because Hamidi has not established that Jeffers behaved in a way that violated any of these standards. Hamidi admitted Jeffers was driving "slowly." The video supports this. Hamidi offers no evidence that Jeffers was inadequately trained or supervised, or that Manheim knew he was a danger to anyone, or that he lacked the proper documents or certifications. In short, there is no evidence of the "'"extreme departure from the ordinary standard of conduct"'" necessary to establish a triable issue of fact regarding gross

negligence. (*City of Santa Barbara v. Superior Court*, *supra,* 41 Cal.4th at p. 754.)

"'Generally it is a triable issue of fact whether there has been such a lack of care as to constitute gross negligence [citation] but not always.'" (*Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 640.) "Where the evidence on summary judgment fails to demonstrate a triable issue of material fact, the existence of gross negligence can be resolved as a matter of law." (*Anderson, supra,* 4 Cal.App.5th at p. 882.)

In *Anderson, supra,* 4 Cal.App.5th at page 871, Anderson, a member of the L.A. Fitness health club, slipped in the men's shower room and broke his arm. The shower room "had no handrails, shower mats, or friction strips," and Anderson had previously complained to club employees about the slippery floor. (*Ibid.*)

Upon joining the club, Anderson had signed a liability waiver. (*Anderson, supra,* 4 Cal.App.5th at p. 870.) On appeal from summary judgment in the club's favor, the court found Anderson failed to produce evidence sufficient to support a theory of gross negligence. (*Id.* at p. 881.) "Although Anderson alleges the tile floor in the shower room was routinely covered in oily and soapy residue, he has not alleged facts to show its condition was an extreme departure from conditions one would expect in a health club shower facility. Nor can he allege the risk in using the shower facility was unknown to him, given his prior falls and his execution of the Release. [Citation.] Anderson also does not allege facts demonstrating that L.A. Fitness engaged in any conduct to actively increase the risk inherent its shower facility. Nor does he allege facts to show L.A. Fitness's maintenance of the shower room constituted an extreme departure from safety standards

16

or that L.A. Fitness somehow concealed a known dangerous condition." (*Id.* at pp. 881–882.)

The evidence in this case is even less compelling. Hamidi knew the risks of the auction floor, as shown by his lengthy experience as an attendee and his agreement to the assumption of the risk language in the 2018 Terms. He did not produce any evidence to show the conditions were "an extreme departure" from what one could ordinarily expect in a similar venue, nor did he show that Manheim did anything to increase the risk. The risk of being hit by a car if someone suddenly stepped backward into a lane was obvious and inherent to the activity. Given the evidence here, summary judgment is appropriate.

Hamidi's remaining arguments are do not help him. He asserts the trial court did not analyze the issue of gross negligence properly, but as we mentioned above, we affirm the order granting summary judgment if it was correct on any ground raised below, with our focus on the trial court's ruling, not its reasoning. (*Oakland Raiders v. National Football League*, *supra*, 131 Cal.App.4th at p. 630.)

## DISPOSITION

The judgment is affirmed. Manheim is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


SCOTT, J.