[No. D055929. Fourth Dist., Div. One. May 20, 2010.]

CITIZENS FOR RESPONSIBLE EQUITABLE ENVIRONMENTAL
DEVELOPMENT, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent;
WESTFIELD, LLC, et al., Real Parties in Interest and Respondents.

1034

**COUNSEL**

Briggs Law Corporation, Cory J. Briggs and Mekaela M. Gladden for Plaintiff and Appellant.

Opper & Varco and Suzanne R. Varco for Defendant and Respondent.

Latham & Watkins, Christopher W. Garrett and Jeffrey P. Carlin for Real Parties in Interest and Respondents.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Citizens for Responsible Equitable Environmental Development (CREED) filed a second amended petition for a writ of mandate and complaint for

injunctive and declaratory relief against defendant City of San Diego (the City), claiming that the City failed to provide proper notice of a public hearing at which the City approved two resolutions related to a project for the redevelopment and expansion of the University Town Center, a regional shopping center (the Project).[1]

In its briefing in the trial court, CREED claimed that the City failed to properly provide notice of its intent to vacate a public right-of-way and to abandon various public easements on the property on which the Project would be constructed.[2] Specifically, CREED maintained that the City failed to provide certain forms of particularized notice that CREED asserts are required by the Public Streets, Highways, and Service Easements Vacation Law (PSHSEVL) (Sts. & Hy. Code, § 8300 et seq.) and the San Diego Municipal Code (Municipal Code).[3] CREED also claimed that the City violated the Municipal Code by failing to provide proper notice of the City's proposed amendment of its land use plans to facilitate the Project.

Respondents countered that the notice requirements of the PSHSEVL did not apply in this case because the City provided notice of its intent to vacate the public right-of-way and the public easements pursuant to the Subdivision Map Act (Gov. Code, § 66410 et seq.), rather than the PSHSEVL. Respondents also claimed that the City provided the notice required under the Municipal Code prior to amending the land use plans.

The trial court denied CREED's second amended petition and request for declaratory and injunctive relief in its entirety, and entered a judgment in favor of respondents. On appeal, CREED renews the contentions that it raised in the trial court. We conclude that the City was not required to provide the forms of notice that must be provided for vacations that are effectuated under the PSHSEVL, because the City properly effectuated the vacations pursuant to the Subdivision Map Act; neither state law nor the Municipal Code requires that the City act pursuant to the PSHSEVL. We further conclude that the City did not violate the Municipal Code in providing notice of the City's proposed amendment of its land use plans. Accordingly, we affirm the judgment.

---

[1] The Project was proposed by real party in interest Westfield, LLC, and various entities associated with Westfield (collectively Westfield). Although CREED named "Westfield Corporation" as a real party in interest, Westfield refers to itself as "Westfield, LLC." The other Westfield entities named in the second amended petition are CMF University Towne Center North, LLC; CMF UTC North, LLC; CMF University Towne Center South, LLC; CMF UTC South, LLC; University Towne Center Venture, LLC; and University Town Centre LLC.

[2] The parties draw no distinction between "vacating" or "abandoning" a public right-of-way or public easement. Accordingly, for ease of reference, we generally use the term "vacate" or forms thereof throughout this opinion to refer to either vacating or abandoning.

[3] Unless otherwise specified, all subsequent section references are to the Municipal Code.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The public hearing notice*

On July 10, 2008, the City published a notice of a public hearing regarding certain aspects of the Project. The notice stated that the city council would be holding a public hearing on July 29, 2008, concerning the "[m]atter of approving, conditionally approving, modifying, or denying an application for an amendment to the Progress Guide and General Plan, [and] the University Community Plan [and] Vesting Tentative Map with summary vacation of utility, pedestrian, and non-motor vehicle easements and public right-of-way . . . ."

B. *The resolutions adopted at the public hearing*

On July 29, the city council held a public hearing regarding the proposed amendments to the land use plans and the tentative map application. At the conclusion of the hearing, the city council adopted resolutions approving the amendments and the tentative map. The resolution approving the tentative map states that the property contains a right-of-way and easements that must be vacated "pursuant to the [Subdivision] Map Act to implement the Final Map in accordance with . . . section 125.0430."[4] That resolution also states:

"[P]ursuant to California Government Code section 66434, [subdivision] (g), the following public service easements and rights-of-way located within the project boundaries as shown in vesting Tentative Map No. 293788, shall be vacated, contingent upon the recordation of the approved final map for the project:

"a. Portion of Water and Sewer Easement, Document No. 84-066025 . . . ;

"b. Water and Sewer Easement, Document No. 83-331443 . . . ;

"c. Pedestrian and Non-motor Vehicular Easement, Document No. 1990-0562801 . . . ; and

"d. Non-motor Vehicular and Pedestrian Rights-of-Way dedicated per Map No. 8332, Document No. 76-215704 . . . ."

---

[4] Section 125.0430 specifies the procedure that the City uses to process various types of tentative map applications, including those applications that contain a proposal to vacate a public right-of-way or public easement. (See pt. III.A.2.c.(i), *post.*)

## C. *CREED's pleadings*

In February 2009, CREED filed an amended petition for writ of mandate and complaint for declaratory and injunctive relief. In its amended petition, CREED claimed that the City's notice of the July 29 city council hearing was defective under the Subdivision Map Act (Gov. Code, § 65090) (first cause of action), the PSHSEVL (Sts. & Hy. Code, § 8300 et seq.) (second cause of action), and provisions of the Municipal Code that mandate that the City comply with the PSHSEVL (third cause of action).

In May 2009, CREED filed a brief in support of its petition. In its brief, CREED stated that it intended to dismiss its first cause of action in which it claimed a violation of the Subdivision Map Act (Gov. Code, § 65090), and also stated that it intended to file a second amended petition in which it would add a cause of action alleging a violation of section 112.0305.[5] CREED claimed that the City had violated section 112.0305 by failing to provide proper notice of its intent to consider the land use plan amendments at the July 29 hearing.

In an accompanying request for judicial notice, CREED requested that the trial court take judicial notice of the City's published notice for the July 29 hearing, the resolution approving the amendments of the land use plan, the resolution approving the vacating of the easements and right-of-way, and various provisions of the Municipal Code, among other items.

Also in May 2009, the trial court permitted CREED to file the operative second amended petition for writ of mandate. The second amended petition contained four causes of action—the three causes of action contained in CREED's first amended petition, and the additional cause of action described in CREED's brief in support of its petition, alleging a violation of section 112.0305.

## D. *The oppositions*

In its brief in opposition to the second amended petition, Westfield argued that CREED's action was barred due to CREED's failure to exhaust administrative remedies. Westfield also claimed that CREED could not prevail on its claims because it could not establish that any purported notice errors had caused CREED to suffer prejudice, as defined in Government Code section 65010, subdivision (b).

In the City's opposition brief to the second amended petition, the City claimed that it had complied with all applicable notice requirements of both

---

[5] In June 2009, CREED dismissed the first cause of action in which it alleged a violation of the notice provisions applicable to Subdivision Map Act hearings (Gov. Code, § 65090).

state law and the Municipal Code. The City maintained that the PSHSEVL was inapplicable to the Project because the Subdivision Map Act and the Municipal Code provide an alternative method for vacating public easements and rights-of-way, and that the City had effectuated the vacations at issue in this case pursuant to the Subdivision Map Act and Municipal Code provisions implementing the Subdivision Map Act, rather than the PSHSEVL. The City also claimed that it had not violated section 112.0305 in providing notice of the public hearing on the proposed amendments to the land use plans at issue.

In support of its opposition, the City offered the declaration of Jeffrey D. Strohminger, the City's assistant deputy director of development services, who assisted in drafting many of the Municipal Code provisions at issue. Strohminger stated that the City has consistently interpreted the Municipal Code as providing that public rights-of-way and easements may be vacated pursuant to "either the Subdivision Map Act **or** the [PSHSEVL]." The City attached to Strohminger's declaration an internal policy document entitled "Managing Public Right-of-Way Vacations and Easements." This document states that vacations may be processed by the City pursuant to *either* the Subdivision Map Act or the PSHSEVL.[6]

The City requested that the court take judicial notice of portions of the legislative history of Government Code section 66434, subdivision (g), and city council policy No. 600-15. The city council policy, which first became effective in 1993, states in relevant part: "Where the street vacation is being processed in accordance with the Subdivision Map Act, the Council will approve a resolution authorizing the street vacation(s) in accordance with appropriate procedures. The Final Map shall specify the resolution which authorizes the street(s) to be vacated under this procedure, and the vacations(s) will become effective upon recordation of the Final Map(s)."

E. *CREED's reply*

CREED filed a reply in which it reiterated its arguments that the City had failed to provide proper notice of the proposed vacations and amendments to the land use plan. CREED also argued that it was not required to exhaust administrative remedies because it had not received proper notice of the July

---

[6] The City also lodged the administrative record of the challenged approvals. We deny CREED's request that we take judicial notice of the trial court's ruling on a motion to tax costs in which the trial court stated, "Although the administrative record was delivered to the Court, it was not considered by the Court." The trial court's statement is irrelevant to the issues presented on appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257 [63 Cal.Rptr.3d 418, 163 P.3d 106] [matter to be judicially noticed must be relevant to a material issue].) We deny as moot respondents' request that we strike a reference to the trial court's statement in CREED's reply brief.

29 public hearing. In addition, CREED contended that it was not required to establish prejudice, as defined in Government Code section 65010, subdivision (b), because its action did not arise under the Planning and Zoning Law (Gov. Code, § 65000 et seq.). With its reply, CREED filed a request that the trial court take judicial notice of additional provisions of the Municipal Code.

## F. The trial court's ruling and CREED's appeal

On June 25, the trial court issued a tentative ruling denying the petition for writ of mandate in its entirety.[7] The trial court concluded that CREED had failed to exhaust its administrative remedies prior to filing the petition, and in any event, that the City had complied with all applicable notice requirements. CREED submitted on the tentative ruling, and the trial court confirmed the tentative ruling as its final decision. On July 8, 2009, the trial court entered a judgment denying CREED's petition for writ of mandate and request for declaratory and injunctive relief. CREED appeals from the judgment.

## III.

## DISCUSSION

### A. The City provided adequate notice of its intent to vacate a public right-of-way and various public easements

CREED claims that the City failed to provide notice of its intent to vacate a public right-of-way and various public easements as mandated under the PSHSEVL (Sts. & Hy. Code, § 8300 et seq.) and the Municipal Code. Respondents counter that neither the PSHSEVL nor the Municipal Code requires that the City vacate public rights-of-way or public easements exclusively pursuant to the provisions of the PSHSEVL, and that the City properly effectuated the vacations in this case pursuant to the Subdivision Map Act (Gov. Code, § 66410 et seq.), rather than the PSHSEVL.

#### 1. Standard of review and principles governing the interpretation of statutes and ordinances

In reviewing a trial court's judgment on a petition for writ of mandate, an appellate court exercises its independent judgment on legal issues, such as the

---

[7] In its ruling, the trial court granted CREED's request for judicial notice of the City's published notice for the July 29 hearing, the resolutions approving the amendments of the land use plan and the vacation of the easements and right-of-way, and the provisions of the Municipal Code. The court also granted the City's request for judicial notice of portions of the legislative history of Government Code section 66434, subdivision (g) and city council policy No. 600-15.

interpretation of statutes and ordinances. (E.g., *Szold v. Medical Bd. of California* (2005) 127 Cal.App.4th 591, 595–596 [25 Cal.Rptr.3d 665].) CREED's claims require that we interpret two statutes—the Subdivision Map Act (Gov. Code, § 66410 et seq.) and the PSHSEVL (Sts. & Hy. Code, § 8300 et seq.)—and also require that we interpret provisions of the Municipal Code.

■ "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484–485 [17 Cal.Rptr.3d 88].)

In reviewing the Municipal Code, we apply the framework developed in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*). (See *Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 928 [8 Cal.Rptr.3d 178] [applying *Yamaha* in reviewing zoning administrator's interpretation of city charter and municipal code]; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219 [130 Cal.Rptr.2d 564] [applying *Yamaha* in reviewing hearing officer's interpretation of mobilehome rent control ordinance].)

In *Yamaha*, the California Supreme Court held that, "Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent— the 'weight' it should be given—is . . . fundamentally *situational*." (*Yamaha, supra*, 19 Cal.4th at p. 12.) Greater deference should be given to an agency's interpretation where " 'the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion.' " (*Id.* at p. 12, quoting Cal. Law Revision Com., Tent. Recommendation, Judicial Review of Agency Action (Aug. 1995) p. 11 (Tentative Recommendation).) For example, where an agency interprets " 'its own regulation . . . the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' " (*Yamaha, supra*, 19 Cal.4th at p. 12, quoting Tent. Recommendation, *supra*, at p. 11.) In addition, greater deference is appropriate where there are "indications of careful consideration by senior agency officials." (*Yamaha, supra*, 19 Cal.4th at p. 13.)

The *Yamaha* court also stated that "evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . . and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted," warrant increased deference. (*Yamaha, supra*, 19 Cal.4th at p. 13, quoting Tent. Recommendation, *supra*, at p. 11.)

2. *Substantive law*

a. *The Subdivision Map Act*

██ "The [Subdivision Map Act (Gov. Code, § 66410 et seq.)] is the primary regulatory control governing the division of property in California and generally requires that a subdivider of property design the subdivision in conformity with applicable general and specific plans and to construct public improvements in connection with the subdivision." (*Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 445 [94 Cal.Rptr.2d 901].)

With exceptions that are not relevant to this case, the Subdivision Map Act requires a prospective subdivider of property to file a "tentative map." (Gov. Code, § 66426.) A tentative map is "a map made for the purpose of showing the design and improvement of a proposed subdivision and the existing conditions in and around it and need not be based upon an accurate or detailed final survey of the property." (Gov. Code, § 66424.5, subd. (a).) A local agency considers whether to approve a tentative map at a noticed public hearing. (Gov. Code, §§ 66451, 66451.3.) Generally speaking, the local agency must publish notice of the hearing in at least one newspaper of general circulation, at least 10 days prior to the hearing. (Gov. Code, § 65090.)[8] Once a tentative map is approved, the local agency must approve a final map that is in substantial conformity with the tentative map. (Gov. Code, § 66474.1.) Local agencies may adopt specific requirements concerning the process of applying for, and approving, tentative and final maps. (Gov. Code, § 66411.)

Of particular relevance to this case, Government Code section 66434, subdivision (g) provides that public streets and easements that are not shown on a final map shall be deemed abandoned under the following circumstances: "The filing of the final map shall constitute abandonment of all public streets and public easements not shown on the map, provided that a written notation of each abandonment is listed by reference to the recording data or other official record creating these public streets or public easements

---

[8] As noted previously (see fn. 5, *ante*), CREED dismissed its claim that the City failed to provide proper notice under the Subdivision Map Act.

and certified to on the map by the clerk of the legislative body or the designee of the legislative body approving the map."

### b. *The Public Streets, Highways, and Service Easements Vacation Law*

The PSHSEVL (Sts. & Hy. Code, § 8300 et seq.) provides a method by which public entities may vacate public service easements. (Sts. & Hy. Code, § 8312.) Streets and Highways Code sections 8320 through 8325 specify the procedures by which a public entity may initiate, consider, and approve such vacations. CREED notes that Streets and Highways Code sections 8320, subdivision (b), 8322, and 8323 require that public agencies provide particular forms of notice prior to effectuating vacations of easements or rights-of-way under the PSHSEVL.[9]

Streets and Highways Code section 8311, subdivision (a) specifies that the procedures set forth in the PSHSEVL are not intended to serve as the exclusive method by which a public entity may vacate public streets or easements. The statute provides: "The procedures provided in this part are alternative procedures for vacating streets, highways, and public service easements. The authority granted in this part is an alternative to any other authority provided by law to public entities."

### c. *The Municipal Code*

Municipal Code, chapter 12, article 5 (article 5) is entitled "Subdivision Procedures." Chapter 12, article 5, division 1, contains section 125.0101, which provides that article 5 is intended to "supplement the provisions of the Subdivision Map Act and [the PSHSEVL] . . . ." (Italics omitted.) Article 5 contains divisions that govern tentative maps (div. 4), the vacation of public rights-of-way (div. 9), and the abandonment of public easements (div. 10).

### (i) *Tentative maps*

Division 4, "Tentative Maps," implements the Subdivision Map Act and specifies the process for approving tentative maps. (§ 125.0401.) Section 125.0430 specifies which decision process the City will use in considering particular types of tentative map applications: "An application for a tentative

---

[9] Streets and Highways Code section 8322 generally requires that the public agency publish notice of its intent to hold a public hearing to consider a proposed vacation under the PSHSEVL, and specifies the timing of such published notices. Streets and Highways Code section 8323 requires that notices concerning such hearings be posted at the site of the proposed vacations. Streets and Highways Code section 8320, subdivision (b) specifies the contents of the notices.

map may be approved, conditionally approved, or denied in accordance with . . . Process Four for tentative final maps *except for those tentative maps that include proposals for the vacation of public rights-of-way or the abandonment of public service easements, which shall be reviewed in accordance with Process Five*."[10] (Italics omitted and added.)

### (ii) *Vacations of public rights-of-way and public easements*

Division 9 is entitled "Public Right-of-Way Vacations." Section 125.0901 provides, "The purpose of these procedures is to establish a process for approving applications to vacate a *public right-of-way* and to supplement the provisions of [the PSHSEVL]." Section 125.0910, subdivision (a) provides: "The vacation of a public right-of-way may be initiated by resolution of the City Council or by petition or request of any person. A public right-of-way *also may be vacated by filing a tentative map and a . . . final map pursuant to the Subdivision Map Act*, Section 66499.20 1/2,[11] and in accordance with the provisions of this article." (Italics omitted and added.)

Section 125.0940 specifies the procedures that the City will use in making a decision on an application to vacate a public right-of-way. Section 125.0940 requires that the City provide the forms of notice specified in PSHSEVL for vacations to be effectuated under that law. Division 10, "Easement Abandonments," contains provisions with respect to easements that are nearly identical to those in division 9 pertaining to rights-of-way. (See §§ 125.1001, 125.1010, 125.1030.)[12]

---

[10] Municipal Code, chapter 11, article 2, division 5 (division 5), defines decision processes that the City is to use in acting on applications for permits, maps and other matters. Division 5 outlines five general decision processes, ranging from "Process One," in which the application is approved or denied at the staff level, to "Process Five," in which staff reviews an application, the planning commission recommends whether to approve the application, and the city council holds a hearing to consider the application. (§ 112.0501.)

[11] Government Code section 66499.20 1/2 concerns lands previously subdivided and contains a provision regarding the abandonment of public easements identical to that contained in Government Code section 66434, subdivision (g).

[12] In its reply brief, CREED contends, for the first time on appeal, that additional Municipal Code provisions, not referred to in the text, support its arguments. In an accompanying request for judicial notice, CREED requests that this court take judicial notice of these additional Municipal Code provisions. CREED acknowledges that it did not present any of these additional Municipal Code provisions to the trial court. CREED fails to present any persuasive argument for its failure to do so, or for its failure to cite the provisions in its opening brief. Accordingly, we deny CREED's request for judicial notice of the additional Municipal Code provisions, and we decline to consider CREED's arguments premised thereon. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085] ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."]; *Jameson v. Desta* (2009) 179 Cal.App.4th 672, 674, fn. 1 [101 Cal.Rptr.3d 345] [" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to

## B. *Application*

### 1. *The PSHSEVL does not provide the exclusive method by which a public entity may vacate public rights-of-way or public easements*

CREED claims that the City failed to provide notice of its intent to vacate a public right-of-way and various public easements as mandated under the PSHSEVL. Specifically, CREED maintains that the PSHSEVL required the City to post notices of the proposed vacations along the right-of-way and the easements. (Sts. & Hy. Code, § 8322.) CREED further contends that the City was required to publish notices of the proposed vacations for two successive weeks, and to include in the notices certain statutorily mandated information concerning the proposed vacations. (Sts. & Hy. Code, §§ 8320, subd. (a), 8323.)

The PSHSEVL expressly states that the procedures set forth therein constitute "alternative procedures for vacating streets, highways, and public service easements," and that the "authority granted in this part is an alternative to any other authority provided by law to public entities." (Sts. & Hy. Code, § 8311, subd. (a).) The Subdivision Map Act provides a separate, lawful manner by which public entities may vacate public rights-of-way and easements. (Gov. Code, § 66434, subd. (g) ["The filing of the final map shall constitute abandonment of all public streets and public easements not shown on the map . . . ."].) The legislative history of Government Code section 66434, subdivision (g) states, "This bill specifies a procedure that permits public streets or public easements to be abandoned by the filing of a final subdivision map including a procedure requiring the clerk of the local legislative body to certify each abandonment on the applicable map." (Legis. Counsel's Dig., Sen. Bill No. 320 (1997–1998 Reg. Sess.) 6 Stats. 1997, Summary Dig., p. 242.) Accordingly, it is clear that state law permits public entities to vacate rights-of-way and easements pursuant to *either* the Subdivision Map Act *or* the PSHSEVL.

We reject CREED's contentions to the contrary. CREED first claims that respondents should be precluded from arguing that PSHSEVL does not provide the exclusive method for vacating public easements because the City purportedly took the opposite position in another case in this court. We reject this contention because it is not based on documents in the record in this case.[13] We also reject CREED's suggestion, raised for the first time in its

---

counter the argument.' [Citation.]"].) We therefore deny as moot respondents' request that we strike those portions of CREED's reply brief citing to the additional Municipal Code provisions.

[13] While this appeal was pending, this court denied CREED's request that we take judicial notice of certain records from the other case.

reply brief, that this court issue a writ of *coram vobis* directing the trial court to take additional evidence on this issue. The portion of the unpublished opinion in the case that CREED quotes in its brief makes clear that the case involved whether the City could abandon a public easement through nonuse, *not* whether the City may abandon or vacate easements pursuant to the Subdivision Map Act. We therefore reject CREED's argument that it has demonstrated that a writ should be issued to guard against the "potential for fraud on the [j]udiciary."[14]

██ CREED also argues that public rights-of-way and easements may not be vacated pursuant to the Subdivision Map Act because that act "prescribes no application or approval procedure for public right-of-way vacations or easement abandonments sought as part of a tentative map" and that "nothing on the face of [Government Code section 66434, subdivision (g)] exempts [the City] from compliance with the [PSHSEVL] . . . ." We are not persuaded. As noted above, the Subdivision Map Act specifies the general procedures by which a local agency is to consider whether to approve tentative and final maps (Gov. Code, §§ 66451, 66451.3, 66474.1), and authorizes local agencies to adopt additional requirements concerning such maps (Gov. Code, § 66411). Government Code section 66434, subdivision (g), which outlines the circumstances under which the filing of a final map vacates public rights-of-way and easements, makes no reference to the PSHSEVL, and, as noted above, the PSHSEVL itself specifies that it is an *alternative* procedure for vacating public rights-of-way and easements. (Sts. & Hy. Code, § 8311, subd. (a).) It is clear that, under state law, local agencies may vacate public rights-of-way and easements pursuant to the tentative and final map approval process, without also having to comply with the notice requirements of the PSHSEVL.

2. *The Municipal Code authorizes the City to vacate public rights- of-way and public easements pursuant to the Subdivision Map Act*

CREED also argues that, even assuming the PSHSEVL does not provide the exclusive method for vacating public rights-of-way and easements under state law, the Municipal Code requires that the City comply with the notice provisions of the PSHSEVL whenever the City vacates a public right-of-way or a public easement. The City argues that the Municipal Code follows state law, and provides that the City may vacate rights-of-way and easements pursuant to *either* the Subdivision Map Act *or* the PSHSEVL. In our view, the City has the better argument.

---

[14] In light of our rejection of CREED's argument, we deny as moot respondents' request that we strike the portion of CREED's reply brief in which it makes this argument.

To begin with, an application of the *Yamaha* factors indicates that the City's interpretation of its own Municipal Code is entitled to considerable deference (see *Yamaha, supra*, 19 Cal.4th at pp. 12–13), since notice provisions under the Municipal Code are a subject as to which the City has expertise and technical knowledge (*Yamaha, supra*, 19 Cal.4th at p. 12). In addition, the Strohminger declaration, the development services department policy document, and city council policy No. 600-15 (see pt. II.D., *ante*) constitute evidence that the City has consistently maintained its interpretation of the Municipal Code, and that this interpretation has been given "careful consideration by senior [City] officials . . . ." (*Yamaha, supra*, 19 Cal.4th at p. 13.)

Section 125.0430 specifies the process that the City will use to consider tentative map applications that propose "the vacation of public rights-of-way or the abandonment of public service easements." (Italics omitted.) Section 125.0430 is contained in a division of the Municipal Code that implements the Subdivision Map Act and specifies the process for approving tentative maps. Section 125.0430 contains no express or implied reference to the additional notice provisions mandated for vacations that are conducted pursuant to the PSHSEVL. Section 125.0430 thus strongly supports the conclusion that the City may vacate public rights-of-way and easements pursuant to the Subdivision Map Act (Gov. Code, § 66434, subd. (g)), without complying with the separate notice provisions contained in the PSHSEVL.

In addition, the provisions of the Municipal Code that implement the PSHSEVL expressly acknowledge that rights-of-way and easements "*also*" may be vacated pursuant to the Subdivision Map Act and the Municipal Code provisions implementing the Subdivision Map Act. For example, section 125.0910, subdivision (a) provides, "A public right-of-way *also* may be vacated by filing a tentative map and a . . . final map pursuant to the Subdivision Map Act . . . and in accordance with the provisions of this article." (Italics omitted and added, citation omitted; see also § 125.1010 [same as to easements].)[15] Similarly, section 125.0950 suggests that rights-of-way may be vacated pursuant to the Subdivision Map Act *or* the PSHSEVL. Section 125.0950 provides, "The filing for record of a subdivision map pursuant to the Subdivision Map Act . . . shall have the same effect [as recording a resolution of vacation of a right-of-way]." (Italics omitted.) (See also § 125.1050 [same as to easements].)

---

[15] As the City points out, the reference in section 125.0910 to the "provisions of this *article*" (italics added), is most reasonably interpreted as referring to the provisions referred to in section 125.0430, which is contained in the same *article* as section 125.0910, but in a separate *division*. (Compare div. 4 [implementing the Subdivision Map Act provisions regarding tentative maps] with divs. 9 and 10 [implementing the PSHSEVL provisions regarding the vacation of public rights-of-way and easements].)

We reject CREED's argument that sections 125.0910 and 125.1010 should be interpreted as providing that filing a tentative-map application is one of the methods for *"initiating* the vacation/abandonment process," and that the provisions of the Municipal Code implementing the PSHSEVL in divisions 9 and 10 are *"triggered"* by filing a tentative map application. (Italics added.) For the reasons stated in the previous paragraphs, we conclude that sections 125.0910 and 125.1010, are best interpreted as referring to the *alternative* mechanism for vacating rights-of-way and easements pursuant to the Subdivision Map Act and the Municipal Code provisions implementing the Subdivision Map Act.

We reject CREED's argument that the Municipal Code required the City to have complied with the PSHSEVL in this case because the particular resolution at issue contained findings that were required pursuant to the Municipal Code provisions implementing the PSHSEVL in divisions 9 and 10. The City notes that such findings are required for *all* vacations pursuant to city council policy No. 600-15.

██ In sum, we have found nothing in the Municipal Code that would suggest that the City intended to depart from state law provisions that authorize public entities to vacate easements and public rights-of-way pursuant to *either* the PSHSEVL *or* the Subdivision Map Act. We agree with the City that "the intent behind the relevant sections of the [Municipal Code] is clear, particularly when considered in the context of the [PSHSEVL] and the [Subdivision] Map Act provisions they were designed to implement." Accordingly, we conclude that the Municipal Code does not require the City to provide notice mandated for vacations effectuated pursuant to the PSHSEVL when it vacates a right-of-way or easement pursuant to the Subdivision Map Act.

C. *The trial court did not err in concluding that the City provided adequate notice of its amendment to the of City's land use plans, pursuant to the Municipal Code*

CREED claims that the City violated section 112.0305 by failing to provide proper notice of the City's proposed amendments of its land use plans. Respondents maintain that the City did not violate section 112.0305 in providing notice of the City's proposed amendments of its land use plans.

We apply the independent standard of review to CREED's claim because it requires us to interpret an ordinance. (See pt. III.A.1., *ante.*) We afford a

moderate amount of deference to the City's interpretation of section 112.0305. (See *Yamaha, supra,* 19 Cal.4th at p. 12.)[16]

### 1. *Governing law*

Municipal Code, chapter 11, article 2, division 3, contains various notice provisions that pertain to decisions to be made by the City on various issues. Section 112.0301, specifies three general types of notice: "Notice of Application," "Notice of Future Decision," and "Notice of Public Hearing," and sets forth the content and distribution of each type of notice. Sections 112.0302, 112.0303, and 112.0304 outline the manner by which notice by mail, publication, and posting is to be performed. Section 112.0305 provides: "When a land use plan, a zoning ordinance, or a rezoning ordinance is to be considered at a public hearing, the City Manager shall submit a Notice of Public Hearing for publication as set forth in Section 112.0303 to be published at least 10 business days before the date of the public hearing. This notice shall be provided in addition to the other notices required by this division." (Italics omitted.)

### 2. *Application*

It is undisputed that, in addition to providing notice of its intent to vacate a public right-of-way and various public easements, the City provided notice of its intent to "approv[e], conditionally approv[e], modify[], or deny[] an application for an amendment to the Progress Guide and General Plan, [and] the University Community Plan."

■ CREED argues that section 112.0305 required the City to publish a *separate* notice of its intent to amend a land use plan "in addition" to the published notice that it provided of its intent to vacate a public right-of-way and various public easements. We are not persuaded. Assuming that section 112.0305 applies in this case, the notice that the City provided was sufficient to satisfy that section.[17] There is nothing in section 112.0305 that mandates that the "addition[al]" notice required in that section be provided in a *separate* notice.

---

[16] Although notice provisions under the Municipal Code are a subject as to which the City has expertise and technical knowledge, none of the other *Yamaha* factors warrants according the City's interpretation of section 112.0305 heightened deference. (See pt. III.A.1., *ante.*)

[17] Respondents argue that the City was not required to provide any notice of the City's *consideration* of the proposed amendment to the land use plans pursuant to section 112.0305 because it provided notice pursuant to section 122.0105, which requires notice of public hearings at which a City will render a *decision* on a land use plan or amendment. We need not consider (nor render a decision) on this issue in light of our conclusion in the text.

Because the City's notice informed the public of the hearing on the proposed land use plan amendment, we conclude that the trial court did not err in its determination that the City provided adequate notice under section 112.0305.[18]

## IV.

## DISPOSITION

The judgment is affirmed. CREED is to bear costs on appeal.

McConnell, P. J., and Benke, J., concurred.

---

[18] In light of our rejection of CREED's claims on their merits, we need not consider respondents' alternative grounds for affirmance. We deny as moot respondents' motion to strike a footnote from CREED's reply brief in which CREED asserted that it was prejudiced by the City's alleged failures to provide proper notice.