Filed 3/28/17 (pub. order 4/20/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CITIZENS FOR BEACH RIGHTS, | D069638 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00028857-CU-WM-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge. Reversed and remanded with directions.


Jan I. Goldsmith, City Attorney, Daniel F. Bamberg, Assistant City Attorney, and Jana Mickova Will, Deputy City Attorney, for Defendant and Appellant.

Law Office of Craig A. Sherman and Craig A. Sherman for Plaintiff and Respondent.

In 2006, the City of San Diego (City) obtained a Site Development Permit (SDP) to construct a new lifeguard station on Mission Beach. The SDP stated that failure to

utilize the permit within 36 months of its issuance would automatically void the permit. Over the ensuing years, the City worked to secure a permit from the California Coastal Commission (Commission) and to obtain funding for the project. Largely because of the economic downtown, the City struggled to find financing for the project and no construction occurred until 2015. In January of that year, the City notified nearby residents that its contractor would begin construction on the lifeguard station in March. The City issued building permits in April and its contractor began initial work on the project, then stopped before the summer moratorium on beach construction. In August 2015, before the end of the moratorium, Citizens for Beach Rights (Citizens) brought a petition for writ of mandate and claim for declaratory relief seeking to halt construction on the grounds that the SDP issued in 2006 had expired.

The trial court agreed with Citizens and issued a permanent injunction, preventing further construction without a new SDP. The City now appeals, asserting Citizens' claims were barred by the applicable statutes of limitations or the doctrine of laches and, even if the action was not time barred, the SDP remained valid in 2015 under the City's municipal code and policies. The City also asserts Citizens improperly sought declaratory relief. We hold Citizens' action was barred by the applicable statutes of limitations and, even if Citizens' claims had been timely pursued, the SDP remained valid when construction began. Accordingly, the trial court's judgment is reversed.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2005, the City's Engineering and Capital Projects Department submitted an application to the City's Developmental Services Department for a site development

2

permit to construct a new lifeguard station in South Mission Beach.[1]  The existing

station, sitting on one of the City's busiest beaches, was constructed in the 1970s as a

temporary structure and did not fulfill the needs of lifeguards to provide the public with a

safe beach.  Prior to the application, in late 2003 and 2004, the City held public

workshops with residents living within 300 feet of the proposed project site.  As required,

the City posted notice at the site and issued notice of a public hearing set for September

27, 2006, before a Planning Commission hearing officer to approve, conditionally

approve, or deny the application for the site development permit.

In May 2005, the City obtained the unanimous approval of the project by the

Mission Beach Precise Planning Board, a group of community volunteers that serves in

an advisory capacity to the City.  The public hearing on the permit application took place

as scheduled, and the SDP for the new lifeguard station was approved by the hearing

officer on September 27, 2006.  Prior to its application for the SDP, the City also

submitted a coastal development permit application to the Commission.  The

Commission held its public hearing on the City's application on February 15, 2007, and

on February 28, 2007, issued a Notice of Intent to issue the requested permit.

---

[1]     The San Diego Municipal Code (SDMC) states that "[t]he purpose of the Site
Development Permit procedures is to establish a review process for proposed
development that, because of its site, location, size, or some other characteristic, may
have significant impacts on resources or on the surrounding area, even if developed in
conformance with all regulations."  (SDMC, § 126.0501.)  The intent of the site
development permit procedures "is to apply site-specific conditions as necessary to assure
that the development does not adversely affect the applicable land use plan and to help
ensure that all regulations are met."  (*Ibid.*, italics omitted.)

After the City obtained the necessary SDP and coastal development permit, it worked to obtain funding for the project. The lifeguard station falls within the City's Capital Improvement Project (CIP) portfolio, which consists of projects related to the city's infrastructure, including transportation, water, wastewater, storm water, park facilities, fire and police stations, and libraries. In his declaration in opposition to Citizens' petition and complaint, the City Engineer and Director of Public Works stated that from 2004 to 2010 it was difficult for the City to secure funding for projects within the CIP portfolio "due to issues regarding the City's bond market participation and the overall collapse of the economy in 2008." The City's charter requires the City's Chief Financial Officer to certify funds are available to cover a contract before it is signed. Because the City could not secure a funding source during this time frame, it was precluded by the charter from entering into any contract for work on the lifeguard station.

In February 2010, the City's coastal development permit expired. In June 2011, the City renewed its application with the Commission, which reissued the permit in August 2011 with the same conditions contained in the 2007 permit. The City sought two extensions of the second permit, ultimately extending it into 2015 when the City obtained the necessary funding for the project and entered into a contract with EC Constructors, Inc. (EC Constructors) to build the station.

In January 2015, the City's project manager for the lifeguard station, Jihad Sleiman, mailed notice to nearby residents that construction on the project would begin in February. In response to Sleiman's notice, on January 29, 2015, nearby resident Ken Giavara sent an e-mail to Sleiman asking why the City was "building the new station

4

more north" and asserting the project would be "obstructing more of the views."[2] Sleiman responded to the e-mail outlining the reasons for the location, including allowing the existing station to remain operational while the new tower was constructed, improving the location for lifeguards by making the station more central to its area of responsibility and affording guards better views of the area they protect, and minimizing the station's impact to beach residences.

On February 17, 2015, Sleiman gave a presentation at a meeting of the Mission Beach Precise Planning Board concerning the history of the lifeguard station project and its construction. Giavara attended the meeting and asserted that he and his neighbors had not been properly notified of the impending construction and additional public review should be afforded before construction commenced.[3]

On February 25, 2015, EC Constructors began preliminary work on the lifeguard station site, which Giavara recorded on video. Giavara also spoke with a City engineer over the telephone the next day. Giavara told the engineer the square footage of the station exceeded the square footage permitted by the SDP and that he would hire attorneys to stop the construction. On February 27, 2015, the City received and

---

[2]      The location in Sleiman's notice was the same location approved in 2006.

[3]      Giavara also stated his complaints at a May 20, 2015 meeting of the Mission Beach Town Council, a non-governmental organization whose mission includes acting on "community issues related to: 'Development of the Mission Bay recreational area.' " Giavara's wife Linda and a member of the council also raised their opposition to the lifeguard station at the meeting.

responded to a public records act request from Giavara's former attorney asserting the construction was unlawful and seeking all documents related to the project.

On March 18, 2015, the Commission issued its Notice of Acceptance of the City's coastal development permit and on March 25, 2015, the City issued a "Notice to Proceed" to EC Constructors to begin construction in full on the lifeguard station. The notice triggered the contractor's timeframe for completion of the project, setting an anticipated completion date in May 2016. On April 20, 2015, EC Constructors obtained a building permit from the City's Developmental Services Department. Before issuing the permit, the SDMC required the City to determine if all necessary development permits, including the SDP and the coastal development permit, had been obtained.[4] Thereafter, construction continued apace, including placement of a concrete slab, installation of a 43-foot deep steel sheet pile, placement of rebar, and installation of a sewer line.

To comply with the City's annual moratorium on beach construction from Memorial Day to Labor Day, construction on the project halted in May 2015. Before the end of the summer moratorium, on August 26, 2015, Citizens filed its complaint for declaratory relief under Code of Civil Procedure section 1060[5] and petition for writ of

---

[4] SDMC section 129.0108 states: "After all required approvals, *including any required development permits*, have been obtained and all required fees have been paid, the Building Official may issue a construction permit. Construction shall not begin until the required permits have been issued." SDMC section 129.0213, subdivision (b) further provides that a "Building Permit shall not be issued for a development that requires a development permit until the development permit has been issued." (Italics omitted, second italics added.)

[5] Statutory references are to the Code of Civil Procedure unless otherwise specified.

6

mandate under section 1085 in San Diego Superior Court.[6]  On September 2, 2015, Citizens brought an ex parte application for a temporary restraining order to prevent the City from continuing construction once the moratorium ended.  The trial court granted the application and ordered a hearing on Citizens' request for a preliminary injunction on September 18, 2015.  The hearing was continued to September 24, 2015 and, after receiving evidence, the trial court granted the preliminary injunction and ordered Citizens to post an undertaking in the amount of $250,000.[7]

On November 18, 2015, the court conducted a bench trial on Citizens' complaint and petition for writ of mandate.  Both parties submitted trial briefs, supporting declarations, and exhibits.  In its brief, the City asserted its long-standing policy and practice was to consider a site development "permit utilized if a project was undergoing a CIP process and/or pursuing other regulatory approvals such as a Coastal Development Permit."  In support of this claim, the City submitted the declarations of the current director of its Development Services Department and several prior directors, who all stated that the City considered both the pursuit of funding and the processing of an

---

[6]     Giavara is the president of Citizens, which according to its complaint was formed "for the purpose to monitor and ensure that laws are faithfully and fully complied with to protect beach areas within the community, while at the same time preserving neighborhood value, and ensuring strict and good faith compliance with the laws, regulations and ordinances adopted to preserve the same."

[7]     Citizens also sought revocation of the coastal development permit issued on March 15, 2015, on the grounds that the City had submitted misleading information about the project.  The Commission denied the request on October 8, 2015, concluding there was no evidence to support Citizens' claim.

application for a coastal development permit as utilization under the SDP and under the SDMC provisions, which formed the basis for the SDP's condition requiring utilization within 36 months of issuance. The City also argued Citizens' lawsuit was barred by the 90-day statutes of limitations contained in SDMC section 121.0102 and Government Code section 65009, and by the doctrine of laches.

On December 24, 2015, the court issued its order rejecting the City's arguments and finding that the SDP had expired and, as a result, was void. The court also rejected the City's statutes of limitations and laches defenses, concluding that because the SPD expired by its own terms, there was no agency decision subject to the limitations and any delay in Giavara's filing was reasonable.[8] On February 9, 2016, the court entered final judgment in favor of Citizens. The judgment declared the SDP expired and void as of September 27, 2009, and issued a permanent injunction mandating that the City refrain from "any and all construction activities at the South Mission Beach Lifeguard Station project" under the SDP. On February 26, 2016, the trial court granted Citizens' motion to release the preliminary injunction undertaking. The City challenged that order by filing a petition for writ of supersedeas, which this court denied.

---

[8]     At the conclusion of trial, the City requested a statement of decision. The trial court found that the City had not specified the principal issues to be addressed as required by the California Rules of Court, but provided the parties with additional time to submit a sufficient request. Neither party did so.

8

## DISCUSSION

The City asserts Citizens' challenge to the SDP was barred by the statutes of limitations found in the SDMC and the Government Code and, even if the statutes are not applicable, Citizens' suit was barred by the doctrine of laches. The City further contends that even if Citizens' claims are not time-barred, the SDP was not void. Finally, the City asserts Citizens improperly challenged the SDP by seeking declaratory relief, rather than bringing a petition for writ of mandate.

## I

### *Statutes of Limitations*

The City asserts that because Citizens did not timely challenge the issuance of the building permit, it's claims are barred by two applicable 90-day statutes of limitations. The City also contends that the challenge to the SDP, which was issued in 2006, and which Giavara discovered no later than April 9, 2015, is barred by the same limitations period.

## A

The City relies on two statutes to support its contention that Citizens' claims are time barred: SDMC section 121.0102 and Government Code section 65009. The municipal code provision states: "Any action or proceeding to challenge, review, or void any decision made in accordance with the Land Development Code shall commence no later than 90 calendar days after the date on which the decision becomes final. Thereafter; all persons are barred from taking any such action or invoking any defense of invalidity or unreasonableness of the decision." Similarly, Government Code section

9

65009 provides: "[N]o action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903,[9] or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (Gov. Code, § 65009, subd. (c)(1).)

These limitations provisions are intended " ' " 'to provide certainty for property owners and local governments regarding decisions made pursuant to this division' (§ 65009, subd. (a)(3)) and thus to alleviate the 'chilling effect on the confidence with which property owners and local governments can proceed with projects' (*id*., subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions." [Citation.] [¶] To this end, Government Code section 65009, subdivision (c) establishes a short, 90-day statute of limitations, applicable to both the filing and service of challenges to a *broad range* of local zoning and planning decisions. [Citation.] . . . After expiration of the limitations period, "all persons are barred from any further action or proceeding." (§ 65009, subd. (e); [citation].)' " (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491, italics added.)

---

9    "Government Code sections 65901 and 65903 provide for hearing and decision on, and administrative appeals concerning, applications for variances, conditional use permits, and other permits." (*Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 766, fn. 2.)

The parties dispute the applicable standard of review. Citizens contends that resolution of a statute of limitations issue is normally a question of fact, therefore, we must apply an abuse of discretion standard and reverse only if substantial evidence does not support the trial court's determination that the statutes do not apply. The City asserts the application of the statutes of limitations is a pure question of law that we must review de novo. The facts that are relevant to the application of the statutes of limitations are not in dispute. The application of the statutes of limitations, therefore, may be decided as a question of law. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611.)

B

The trial court concluded that SDMC section 121.0102 is inapplicable because Citizens did "not challenge[] the decision to grant the SDP, or any other permit. Instead, the premise of this action is that the SDP was validly issued but expired by its own terms." The trial court's order does not address the limitations period set forth in Government Code section 65009. On appeal, the City contends that any challenge to the SDP was required to occur within 90 days of its issuance, or at the latest when Giavara discovered the existence of the SDP. As a result, the City argues, Citizens' August 26, 2015 claims were time barred by Government Code section 69005 and SDMC section 121.0102. The City also contends the trial court's conclusion improperly ignored the City's issuance of the building permit on April 20, 2105, which necessarily included its decision that the SDP remained valid. Thus, any challenge to that decision was required to occur within 90 days of the issuance of the building permit. We agree.

11

There is no legal authority to support the narrow interpretation of what constitutes a decision by an agency that was adopted by the trial court and is advanced by Citizens on appeal.[10] Citizens' complaint avoids stating that Citizens is challenging the City's decision to validate the SDP and grant the building permit. However, the purpose of Citizens' lawsuit is to stop construction by challenging the City's decision in 2015 to find that the SDP remained valid. That decision was required by the SDMC in order for the City to issue the building permit, i.e. without a valid SDP, the building permit could not have been lawfully approved under SDMC section 129.0108. Citizens cannot plead around the statute of limitations by avoiding mention of the City's actions and instead referring only to the language of the SDP. (See *Honig v. S.F. Planning Dept.* (2005) 127 Cal.App.4th 520, 528 [Rejecting appellant's argument that a challenge to a zoning variance was timely when appellant filed petition within 90 days of a later issued building permit; "[t]he attack on the building permit is, in reality, nothing more than a challenge to

---

10      Citizens also asserts the City waived its affirmative defense based on the statutes of limitations because it did not plead any facts in support of the defense. It is well settled however, that "[t]here are two ways to properly plead a statute of limitations: (1) allege facts showing that the action is barred, and indicating that the lateness of the action is being urged as a defense and (2) plead the specific section and subdivision." (*Martin v. Van Bergen* (2012) 209 Cal.App.4th 84, 91.) The City's answer adequately pleads both specific statutes.

the variance."].)  Citizens' challenge is to the City's decision that the SDP remained valid, which occurred no later than April 20, 2015, when it issued the building permit.[11]

Citizens' reliance on *Simonelli v. City of Carmel-by-the-Sea* (2015) 240 Cal.App.4th 480 (*Simonelli*) to support its assertion that there was no decision by the City to challenge and the statutes of limitations do not apply is misplaced.  In *Simonelli*, the petitioner challenged the respondent city's approval of a development by filing an administrative mandamus petition under section 1094.6.  (*Simonelli*, at p. 482.)  The trial court sustained the city's demurrer based on the petitioner's failure to join the property owner as an indispensable party and denied leave to amend because the 90-day limitations period in section 1094.6 had passed.  The Court of Appeal overturned the denial of leave to amend.  It held that the statute of limitations contained in section 1094.6 by its terms did not apply to the *approval* at issue because it defined a decision to include only "revoking, [or] denying an application for a permit."  (*Simonelli*, at p. 486, italics omitted.)  Neither of the limitations statutes at issue here, Government Code

---

[11]    The second clause of Government Code section 65009, subdivision (c)(1)(E) (applying its statute of limitations to actions "to determine the reasonableness, legality, or *validity of any condition* attached to a  . . . permit") also arguably applies to Citizens' request for the trial court to determine if the SDP's condition that it be utilized within 36 months was satisfied.  (Italics added.)

13

65009, subdivision (c)(1)(E) or SDMC section 121.0102, restrict the definition of decision in this way.[12]

In sum, we disagree with the trial court's conclusion that Citizens' lawsuit was not an attack on a "decision," as that term is used in Government Code section 65009, subdivision (c)(1)(E) and SDMC 121.0102. Citizens' claims—filed on August 26, 2015—were made more than 90 days after the City decided the SDP remained valid and, based on that decision, issued a building permit to EC Contractors. Accordingly, Citizens' action was barred.[13]

II

*Validity of the SDP*

In addition to asserting that the trial court erred by concluding Citizens' claims were not time barred, the City alternatively contends the SDP did not expire under its own terms as the trial court found. As we explain, we also agree with the City on this

---

[12] Like *Simonelli*, none of the cases on which Citizens asserts the City relies, address the definition of what constitutes an agency "decision" subject to the limitations period found in Government Code section 65009. (See *Stockton Citizens for Sensible Planning v. City of Stockton, supra*, 210 Cal.App.4th at p. 1491 [rejecting appellant's contention that 90-day limitation in section 65009 did not apply because approval letter from city's Community Development Director was not a permit issued by a legislative body]; *Honig v. S.F. Planning Dept., supra*, 127 Cal.App.4th at p. 528 [rejecting appellant's challenge to variance based on later issued building permit as untimely]; and *Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 762 [holding a facial challenge to constitutionality of zoning ordinance simultaneously with constitutional challenge to its application in a particular case does not impact the application of the time limitation set forth in Government Code section 65009, subdivision (c)(1)(E).].)

[13] Because we conclude the applicable statutes of limitations bar Citizens' claims, the City's appeal of the trial court's rejection of its laches defense is moot.

14

issue. Accordingly, even if Citizens' claims were not time barred, reversal would still be warranted.

A

The issuance and general utilization requirements of development permits are governed by the SDMC. At the time the SDP was issued, SDMC section 126.0108, titled "Initial Utilization of a Development Permit," stated in pertinent part: "(a) A development permit grants the applicant 36 months to initiate utilization of the permit. If none of the actions listed in section 126.0108(b) has occurred within 36 months after the date on which all rights of appeal have expired, the development permit shall be void. [¶] (b) A development permit may be utilized by the following methods: [¶] (1) Issuance of a construction permit for the entire project or for a substantial portion of the activity regulated by the development permit, as determined by standards developed by the City Manager; [¶] (2) Compliance with the terms contained in the individual permit, such as a phasing program, or the terms contained in the approved Development Agreement; [¶] (3) Evidence of substantial use in progress, according to standards as developed by the City Manager, or [¶] (4) Approval of a final map or parcel map, if the map was a condition of the development permit."[14] (Italics omitted.) At the time the SDP was

_____

[14] Subsection (b) of SDMC 126.0108 now provides: "(b) To demonstrate utilization, the permit holder shall establish, with evidence identified in Section 126.0108(c), that at least one of the following circumstances occurred before expiration of the development permit: [¶] (1) Significant investment was incurred to meet permit conditions; [¶] (2) Substantial work was performed in reliance on the development permit granted; or [¶] (3) Use of the property has occurred in the manner granted by the development permit." (Italics omitted.)

15

issued and throughout this litigation, there was not a *written* policy concerning the definition of utilization contained in subdivision (b)(3). The City's policy, however, was to consider both the CIP process and "pursuit of other regulatory approvals as utilization of a permit."

The SDP itself contains a list of conditions attached to the permit, including ten "Standard Requirements," several of which are relevant here. The first, standard requirement one, is modeled after SDMC 126.0108 and states: "Construction, grading or demolition must commence and be pursued in a diligent manner within thirty-six months after the effective date of final approval by the City, following all appeals. Failure to utilize the permit within thirty-six months will automatically void the permit unless an Extension of Time has been granted. Any such Extension of Time must meet all the SDMC requirements and applicable guidelines in effect at the time the extension is considered by the appropriate decision maker." The next, requirement five, states: "The utilization and continued use of this Permit shall be subject to the regulations of this and any other applicable governmental agency." Requirement six states: "Issuance of this Permit by the City of San Diego does not authorize the Permittee for this permit to violate any Federal, State or City laws, ordinances, regulations or policies . . . ." Finally, requirement seven states: "The Owner/Permittee shall secure all necessary building permits."

As with the statute of limitations provisions applied above, the relevant facts are not in dispute. The interpretation of the SDMC and SDP provisions raise questions of law that this court reviews de novo. (*California Teachers Assn. v. San Diego Community*

16

*College Dist.* (1981) 28 Cal.3d 692, 699.) Further, this court affords deference to agency's interpretation of its own provisions. " 'Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the "weight" it should be given—is . . . fundamentally situational. (*Yamaha* [*Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1,] 12 [(*Yamaha*)].)' " (*Citizens for Responsible Equitable Environmental Development v. City of San Diego* (2010) 184 Cal.App.4th 1032, 1041 (*Citizens*).)

"Greater deference should be given to an agency's interpretation where ' "the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." ' [Citation.]" (*Citizens, supra*, 184 Cal.App.4th at p. 1041.) "[E]vidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . . and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted,' " warrant increased deference. (*Yamaha, supra*, 19 Cal.4th at p. 13.)

B

Citing an SDMC provision stating that if "the provisions of the Municipal Code are in conflict with each other, the more restrictive provisions shall apply," the trial court concluded the SDP's first "Standard Requirement" controlled because it was stricter than SDMC section 126.0108. The trial court next determined that paragraph one limited the definition of the term "utilize[]" in the second sentence to (1) "[c]onstruction," (2) "grading," or (3) "demolition, commenced and pursued in a diligent manner." Because

17

no construction, grading or demolition occurred within 36 months of the SDP's issuance, the trial court concluded the permit was void.

The City asserts this interpretation of the SDP is incorrect because it fails to account for (1) other relevant provisions of the SDP, (2) the relevant municipal code provision, SDMC section 126.0108, and (3) the established policies of the City's Developmental Services Department. We agree. With respect to the SDP itself, the condition at issue, which requires the permittee to use the permit within 36 months, must be harmonized with the rest of the conditions contained in the permit, the permit's overall purpose, and the SDMC provision under which it was issued. (See *Gee v. Workers' Compensation Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1427 [" ' "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in context of the statutory framework as a whole." ' "].)

As the City points out, the SDP itself conditions the "utilization and continued use" of the permit on the permittee's compliance with "the regulations of this [City] and any other applicable governmental agency." The permit is also conditioned on the permittee "secur[ing] all necessary building permits" and explicitly precludes the permittee from "violat[ing] any Federal, State or City laws, ordinances, regulations or policies . . . ." In addition, the Directors of the department responsible for determining the continued validity of the SPD before issuing a building permit, the City's Department of Development Services, all stated under penalty of perjury that the department's policy at all relevant times, and which during this litigation became part of the SDMC, was to consider pursuit of funding and pursuit of required permits "utilization" under the

18

language of SDMC section 126.0108 and the parallel language contained in the SDP. No evidence contradicted these facts. The trial court's interpretation of the SDP, limiting utilization of the permit to only actual "construction, grading or demolition," conflicts both with the other provisions of the permit, which required that the City obtain other necessary permits before beginning any construction activity, with the City's own interpretation of the SDP's standard requirement conditions, and with the SDMC.

The evidence before the trial court was that the City actively pursued the funding needed to enter into a contract for the lifeguard station from the time the permit was issued until it contracted with EC Constructors, and that the City also continuously pursued the coastal development permit. Under the language of the SDP, which conditioned physical work on the project on first obtaining necessary building and other permits, we hold that the City's actions constituted sufficient utilization to prevent the expiration of the permit. The determination of the City's Development Services Department that the SDP was valid before issuing the building permit was, therefore, correct. (See *Citizens, supra*, 184 Cal.App.4th at p. 1047 ["the City's interpretation of its own Municipal Code is entitled to considerable deference."].) The trial court's finding to the contrary was error.

III

*Procedure*

The City also asserts that the trial court improperly decided Citizens' claims as a declaratory relief action, and that the only proper vehicle to challenge the validity of the SDP was a petition for writ of mandate under section 1085. Citizens' initial pleading,

19

however, was titled "Verified Complaint for Declaratory and Injunctive Relief; *Petition for Writ of Mandate*." (Italics added.) Additionally, the complaint and petition states "[Citizens] files this action to enforce applicable local law and express development permit conditions, including but not limited to [SDMC] section 126.0108 and California Code of Civil Procedure §§ 1060 and 1085, for a declaratory judgment and permanent injunction, that the applicant and permittee, defendant and respondent [City] . . . cannot proceed with construction of the South Mission Beach Lifeguard Station . . . due to an ineffective, expired, and void permit."

The ultimate relief sought by Citizens was an injunction to prevent further construction on the lifeguard project. As discussed, Citizens crafted its complaint and petition to avoid challenging the issuance of the SDP or the subsequent building permit, and to instead assert that the SDP was void by its own terms. The trial court agreed with this interpretation of the permit and, accordingly, issued an order declaring the SDP void. As a result of this finding, the trial court entered judgment imposing an injunction preventing further construction without a new site development permit.

As discussed in section I, we hold that Citizens' challenge was actually to the City's determination that the SDP remained valid at the time it issued the building permit. As the City asserts, a challenge to such an administrative action is properly brought by a petition for writ of mandate under section 1085. (See *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1428-1429 ["Generally, a specific decision or order of an administrative agency can only be reviewed by a petition for administrative mandamus."].) Citizens' complaint and petition, however, did assert its

20

claims under both section 1085 for administrative mandamus and section 1060 for declaratory relief. Further, a court may regard a complaint for declaratory relief as a petition for writ mandate. (*Lee v. Blue Shield of California* (2007) 154 Cal.App.4th 1369, 1378-1379.) Given these facts and the outcome of the appeal, the City's challenge to the procedure used by Citizens is moot.

DISPOSITION

The judgment is reversed and remanded with directions to enter judgment in favor of appellant. Appellant shall recover its costs of appeal.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR BEACH RIGHTS, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> CITY OF SAN DIEGO, <br><br>     Defendant and Appellant. | D069638 <br><br> (Super. Ct. No. 37-2015-00028857-CU-WM-CTL) <br><br> ORDER GRANTING PUBLICATION |

THE COURT:

The opinion in this case filed March 28, 2017, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c) the requests pursuant to California Rules of Court, rule 8.1120(a) for publication are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

McCONNELL, P. J.

Copies to:  All parties

2